SARNAFIL, INC. *vs.* PEERLESS INSURANCE COMPANY &
another.[1]

No. 91-P-650.

Norfolk. January 27, 1993 - March 22, 1993.

Present: BROWN, FINE, & GILLERMAN, JJ.

Further appellate review granted, 415 Mass. 1105 (1993).

*Contract*, Insurance, Performance and breach. *Insurance*, Notice, Compre-
hensive liability insurance, Disclaimer of liability, Insurer's obligation
to defend, Coverage. *Notice*, Insurance claim.

On a claim by an insured seeking to recover from its liability insurer the
costs associated with arbitration of a dispute between the insured and a
third party, summary judgment for the insurer was inappropriate where
the record revealed genuine issues of material fact as to whether the
insured, by initiating the arbitration without notice to the insurer, had
engaged in a voluntary undertaking that would relieve the insurer from
liability even if no prejudice to it were shown [253-254], or whether the
insurer had been prejudiced as a result of any of the insured's other
breaches of the insurance contract [254], and where there were also
factual issues as to whether the insurer's alleged failure to investigate
the insured's claim or to communicate with the insured amounted to an
unjustified disclaimer of coverage or of the obligation to defend its in-
sured, so as to preclude it from holding the insured thereafter to a strict
performance of the policy requirements [254-257].

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 15, 1988.

The case was heard by *Andrew G. Meyer*, J., on a motion
for summary judgment. Motions for leave to amend the com-
plaint and for entry of separate and final judgment were
heard by *Gordon L. Doerfer*, J., and *Elizabeth B. Donovan*,
J., respectively.

*John B. Miller* (*Daniel J. Kelly* with him) for the plaintiff.

---

[1] A.E. Barnes & Company Insurance Agency, Inc., against whom related
claims are pending in the Superior Court.

*Carol A. Griffin (John A. Sakakeeny* with her) for Peerless Insurance Company

FINE, J. On September 7, 1984, the roof on two large terminal buildings at the Kansas City International Airport came loose in a windstorm. Sarnafil, Inc. (Sarnafil), a Massachusetts corporation, had supplied the roofing material, and D.C. Taylor Company (Taylor) had installed it. A dispute between Taylor and Sarnafil as to which of the two was responsible for the damage was the subject of a lengthy arbitration. Sarnafil prevailed. In the instant action, Sarnafil is seeking the costs associated with the arbitration from Peerless Insurance Company (Peerless), its comprehensive general liability and commercial umbrella insurance carrier for the year in question. Sarnafil is also seeking damages from Peerless based upon an alleged misrepresentation by its agent, A.E. Barnes & Company Insurance Agency, Inc. (Barnes), concerning the scope of coverage under the Peerless policies. A Superior Court judge allowed Peerless's motion for summary judgment on both claims. Subsequently, another judge denied a motion filed by Sarnafil to amend its complaint. Final judgment was entered for Peerless pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

We conclude that summary judgment was properly allowed as to the misrepresentation claim[2] and that the denial of the motion to amend the complaint was not erroneous.[3] Based upon our review, however, of the massive amount of material presented to the motion judge by both parties, much of it conflicting, we conclude that Sarnafil's claim for defense costs related to the arbitration raised material issues of fact. Viewing the evidence in the light most favorable to Sarnafil,

---

[2]Sarnafil claimed that Barnes represented to it that the Peerless policies included coverage for loss prevention measures and, in reliance on that representation, Sarnafil cancelled a policy with a different company which had been providing such coverage. The motion judge stated two proper reasons for ordering summary judgment for Peerless. We add a third justification for the order: that, although Peerless claimed in its opposition to summary judgment that Sarnafil did not rely on any misrepresentation by Barnes, Sarnafil presented no evidence that anyone associated with it cancelled the other insurance policy in reliance on any statement by Barnes.

[3]The motion to amend sought leave to plead specific facts but did not change the legal theories or add any new ones. The denial of the motion was not an abuse of discretion.

we think there was a basis for a reasonable fact finder to determine that Peerless was liable under the insurance policies to pay at least a portion of such costs.

In reciting the facts before the motion judge, we first consider the insurance policies. They covered Sarnafil's liability to third parties for bodily injury and property damage, except for damage to Sarnafil's own product. Contrary to Sarnafil's original belief, loss prevention measures were not covered. Peerless had the right and obligation[4] under the policies to defend any suit against Sarnafil seeking damages on account of loss of property covered by the policies and the right to control the defense of any such claim. Sarnafil could not "voluntarily make any payment, assume any obligation or incur any expense" and was obligated promptly to forward to Peerless "every demand, notice, summons, or other process" it received related to the policies.

The occurrence on September 7, 1984, involved loss of property supplied by Sarnafil, which was not covered, but there was evidence on the basis of which a reasonable fact finder could have found that the occurrence involved, in addition, speaker boxes, insulation, coping caps, antennae, and fasteners, owned by a third party, which *were* covered. Sarnafil participated in temporary repairs to the roof and promptly notified Peerless of the occurrence. Several meetings were held over the next two weeks to discuss the problem. Sarnafil was seeking advice from Peerless on how to proceed, believing at the time, incorrectly, that it was covered for loss prevention measures.

On September 20, 1984, Taylor made a claim against Sarnafil in writing. On September 27, 1984, Peerless received a copy of the claim from Sarnafil, along with a request that Peerless acknowledge coverage and its intention to provide a defense. There is evidence that as of October 1, 1984, when the letter was received by Peerless, it knew or reasonably should have known that Taylor's claim included property which was not Sarnafil's product and was, therefore,

---

[4] The policy provided: "[T]he company shall have the right to defend any suit against the insured [alleging such injury or destruction and seeking damages on account thereof], even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . ."

covered by the policies, and, in addition, that there was an urgent need for costly repairs to be performed before winter to avoid the possibility of a substantially greater expense to Sarnafil should the repairs be delayed.[5] Although there is evidence that Peerless had determined as early as September 28, 1984, that there was no coverage under its policies, on October 4, 1984, it wrote Sarnafil reserving its rights with regard to coverage[6] and promising a prompt investigation. There is evidence, however, that it made no investigation. Throughout October, Sarnafil conferred with Taylor and airport officials about technical proposals to deal with the emergency situation, keeping Peerless fully informed and repeatedly seeking Peerless's acknowledgment of coverage. On October 15, 1984, Sarnafil wrote to Peerless that, absent such acknowledgment, it would have to proceed on its own.

Having received no response, on November 1, 1984, Sarnafil wrote Peerless again, calling upon Peerless to give assurance of coverage for the property damage claims being asserted. The letter stated, "In the event Peerless fails or refuses to do so, Sarnafil will proceed in good faith as it thinks best and will charge Peerless for all expenses and costs incurred in defending itself against such allegations, including attorneys' fees . . . ." By November 13, 1984, Sarnafil had received no response to its letter. On that date, Taylor notified Sarnafil that it intended to file suit on the claim in the United States District Court in its home State of Iowa. The roof construction agreement between Taylor and Sarnafil provided for arbitration of disputes under the contract in Massachusetts. Massachusetts was a more convenient forum for Sarnafil. On the next day, November 14, 1984, Sarnafil filed with the American Arbitration Association in Boston a demand for declaratory relief with respect to Taylor's and Sarnafil's respective contractual obligations and Sarnafil's right to indemnity from Taylor. On December 7, 1984, Tay-

---

[5]Peerless also could be found to have known that the matter of potential liability was of great concern to Sarnafil because the same roofing material had been used on thousands of other roofs. Moreover, Peerless was the liability insurer with respect to many of those other roofs.

[6]"The purpose of reserving the right to disclaim is to permit an insurer to fulfil its duty to defend without forfeiting any subsequent right to disclaim. See *Salonen* v. *Paanenen*, 320 Mass. 568, 573 (1947)." *Merrimack Mut. Fire Ins. Co.* v. *Nonaka*, 414 Mass. 187, 192 n.6 (1993).

lor submitted to arbitration and counterclaimed against Sarnafil, alleging that Sarnafil's product was defective and seeking damages. Peerless was not informed of the demand for arbitration or the counterclaim before April of 1985.

On November 20, 1984, Peerless wrote Sarnafil that it was engaged in a "comprehensive review and analysis of the coverage questions." In a letter dated December 18, 1984, Peerless denied coverage and refused to provide a defense, citing numerous reasons, including the assertion that the loss only involved damage to property which was excluded. On February 28, 1985, Peerless brought a declaratory judgment action in the Superior Court seeking a determination as to coverage and defense costs, but the action was dismissed without prejudice in June of 1985 by agreement of both parties pending the outcome of the arbitration proceedings. On September 24, 1986, after twenty-six days of hearings, the arbitration decision was handed down. Sarnafil did not sustain its claim under the alleged indemnity agreement with Taylor, but Sarnafil was awarded damages from Taylor in the amount of $339,394.35 for expenses incurred in making repairs to the roof. In addition, Sarnafil prevailed on the counterclaim based upon the arbitrator's finding that its product was not defective.

The motion judge ruled that Sarnafil's unilateral initiation of arbitration, without the knowledge or consent of Peerless, was a breach of the insurance contracts, preventing Sarnafil from recovering its defense costs. He ruled, further, that because no lawsuit had been brought against Sarnafil when it filed for arbitration, Peerless at that time had no duty to defend, and, thus, it had not specifically disclaimed such a duty. Sarnafil does not claim on appeal that it complied with the requirements of the insurance policies. It argues, instead, that none of its breaches actually prejudiced Peerless and that, in any event, Peerless's conduct was such a violation of its duty of good faith that it was excused from strict compliance with the requirements of the policies.

1. *Sarnafil's breach of the insurance contracts.* If we assume that a reasonable fact finder would determine that the claim was covered by the policies, there is an issue whether any of Sarnafil's breaches of the terms of the insurance policies was of such a nature that Peerless would be relieved of

the requirement of showing that as a result of the breach it suffered actual prejudice.

Although a reasonable fact finder could conclude that commencement of arbitration, in the circumstances, was a prudent and cost-effective course of action and was undertaken by Sarnafil unwillingly as a result of outside influence, it was nevertheless, a voluntary undertaking. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 121-123 (1991). Depending upon its nature, a voluntary undertaking may automatically relieve an insurer of liability without the necessity of showing prejudice. *Ibid.* There is some indication in the evidence, however, that, through the initiation of arbitration, Sarnafil was seeking primarily the establishment of its right to be reimbursed by Taylor for expenses incurred in making temporary repairs to the roof, expenses *not* covered under the Peerless insurance policies, and to enforce an alleged indemnity agreement. Sarnafil's claim in arbitration, therefore, may only have been related indirectly to the claim allegedly covered by the insurance policies. The arbitration certainly involved no compromise of the claim.

To the extent that initiating the arbitration involved an expenditure of funds for legal representation before the counterclaim was filed, which expenditure was both voluntary and for a purpose other than defending a claim covered by the policies, Sarnafil is not entitled to reimbursement of those funds. Compare *Montgomery* v. *Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). It is a material issue, however, whether its actions in initiating the arbitration should automatically relieve the insurer of liability for the cost of defending the counterclaim. Unlike the initiation of arbitration, defense of the counterclaim, which could have been found to be a claim covered by the policy, was *not* voluntary on Sarnafil's part. It is true that the counterclaim followed as a direct result of Sarnafil's initiation of the arbitration. In light of the agreement between Taylor and Sarnafil to arbitrate their disputes, however, resolution of the dispute in that forum was inevitable.

Sarnafil was in breach of various provisions of the policies other than the one prohibiting voluntary payments. In particular, there is no evidence that Sarnafil notified Peerless either of the initiation of arbitration or of the counterclaim, or that it cooperated with Peerless in conducting the litigation. Such

notice and cooperation requirements are designed to give the insurer the opportunity to protect its interests. Before an insurer may be relieved of liability based upon such breaches, it must show that it suffered actual prejudice. See *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. 278, 282 (1980); *MacInnis* v. *Aetna Life & Cas. Co.*, 403 Mass. 220, 223 (1988); *Darcy* v. *Hartford Ins. Co.*, 407 Mass. 481, 491 (1990); *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. at 122-123. In view of the agreement between Taylor and Sarnafil calling for arbitration of the dispute, the imminence of litigation in Iowa at the time arbitration was filed, and the successful result Sarnafil achieved in the arbitration, on the one hand, and the length of delay in giving notice, on the other, prejudice was an issue of fact for trial.

2. *Effect of Peerless's own actions.* If Sarnafil's breaches of the insurance contract should be found at trial to be prejudicial, Sarnafil may still show that it was excused from strict compliance by Peerless's own violations of the contract.

A reasonable fact finder could conclude on the conflicting evidence before the motion judge that by December 7, 1984, when the counterclaim was filed, Peerless knew that a claim covered by the policy was being asserted against Sarnafil and that Sarnafil, having tendered to Peerless the right to defend, had insisted upon an acknowledgment of coverage, requested a prompt response, and was facing an emergency situation requiring immediate decisions upon a course of conduct. It could further be found that Peerless did not communicate its decision not to provide coverage promptly and that it conducted no investigation of the facts, even though it had promised to conduct a prompt and diligent one.

Inherent in the contracts of insurance was Peerless's obligation of good faith towards Sarnafil. That obligation was to deal with Sarnafil with "candor and fairness," *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448, 455 (1985), and not to act "to defeat any intended coverage or diminish the protection purchased by the insured," *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 324 (1991). See *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. 184, 186-187 (1959); *Tibbs* v. *Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985). We think the evidence warranted a finding that Peerless's failure to investigate the facts or inform Sarnafil of its decision on coverage by De-

cember 7, 1984, could reasonably have been found to be a violation of the duty of good faith[7] justifying Sarnafil in regarding Peerless's silence, in all the circumstances, as the equivalent of a disclaimer of coverage. The disclaimer could be found to have been unjustified if in fact there was coverage under the policies, and if Peerless knew or should have known that to be so. Such a disclaimer actually was made on December 18, 1984, only eleven days after the counterclaim was filed.

An unjustified disclaimer of coverage or of the obligation to defend a lawsuit (or the functional equivalent of a lawsuit, see *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 695-697 [1990]), prevents an insurer from holding the insured thereafter to strict performance of the policy requirements, and the insured may later recover from the insurer not only defense costs but also, in some instances, the cost of any settlement entered into by the insured in good faith. See *Berke Moore Co.* v. *Lumbermens Mut. Cas. Co.*, 345 Mass. 66, 70 (1962); *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. at 325-326.

The motion judge regarded Peerless's conduct prior to the arbitration in this case as irrelevant because no *suit* had as yet been brought against Sarnafil, and, in accordance with the terms of the insurance policy, a duty to defend would arise only after *suit* was brought. We are persuaded by precedent from other courts and jurisdictions, however, that an insurer's unjustified disclaimer of coverage and duty to defend even before suit is filed may free the insured to proceed along a reasonable course of action without strict conformity with the terms of the insurance policy. See *Liberty Mut. Ins. Co.* v. *Continental Cas. Co.*, 771 F.2d 579, 580-583, 585-586 (1st Cir. 1985); *San Juan* v. *Great Am. Ins. Co.*, 813 F.2d 520, 521 (1st Cir. 1987); *Chemical Applications Co.* v. *Home Indem. Co.*, 425 F. Supp. 777, 779 (D. Mass. 1977); *Walters* v. *American Ins. Co.*, 185 Cal. App. 2d 776, 785,

---

[7]An insurer's duty of good faith has been said to include the requirement of a reasonable and timely investigation, see *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. at 187; *Paulfrey* v. *Blue Chip Stamps*, 150 Cal. App. 3d 187, 194-195 (1983), and prompt notification of any determination of the question of coverage, see *Interstate Cas. Co.* v. *Wallins Creek Coal Co.*, 164 Ky. 778, 781 (1915). See also Windt, Insurance Claims and Disputes §§ 2.04, 2.22 (2d ed. 1988).

786 (1960); *American Fire & Cas. Co.* v. *Kaplan*, 183 A.2d 914 (D.C. 1962); *Thomas W. Hooley & Sons* v. *Zurich Gen. Acc. & Liab. Ins. Co.*, 235 La. 289 (1958); *Murphy & Co.* v. *Manufacturers' Cas. Co.*, 89 Pa. Super. 281 (1926). Contrast *Manny* v. *Estate of Anderson*, 574 P.2d 36 (Ariz. Ct. App. 1977).

In *Marvel Heat Corp.* v. *Travelers Indem. Co.*, 325 Mass. 682 (1950), the court held that an insurer's refusal to assume liability upon notice of a claim against the insured was not a breach of the terms of the policy because there was no evidence that at the time of the refusal, or at any time, the claimant had filed a lawsuit. The insurer was held not liable, therefore, for a settlement entered into between the insured and the claimant. Given the development of the law affecting the relationship between insurance companies and their clients, especially the broadening of the insurer's obligation of good faith, and given the infrequency with which the *Marvel Heat* case has been cited in Massachusetts decisions and its rejection elsewhere as being "against the better and more preponderant authority," *Thomas W. Hooley & Sons* v. *Zurich Gen. Acc. & Liab. Ins. Co.*, 235 La. at 302, it is unclear whether the Supreme Judicial Court would follow the case today.[8] In any event, the facts of the case are distinguishable from those in the instant case in at least one significant respect. In the *Marvel Heat* case, there was no indication that a lawsuit was ever brought against the insured. Taylor's counterclaim in arbitration, however, the cost of defending which is being sought from Peerless, *was* the equivalent of a suit filed against Sarnafil.

In sum, we think that there are material issues relating to coverage under the policy and the effect to be given the actions of the respective parties in the months following the damage to the airport roof which require that Sarnafil's claim, at least insofar as it related to the cost of defending the counterclaim, be tried. Accordingly, we conclude that the allowance of summary judgment for Peerless on counts I and VI (the contract counts for defense costs) was erroneous, and we vacate the portion of the judgment dismissing those counts and remand the case for trial. The motion for sum-

---

[8]See Kaplan, Do Intermediate Courts Have a Lawmaking Function?, 70 Mass. L. Rev. 10, 13 (1985).

mary judgment on counts II, IV, and VII (the counts alleging misrepresentation and the right to loss prevention costs) was properly allowed.

> *Judgment reversed as to counts I and VI.*
> *Judgment affirmed as to counts II, IV, and VII.*