SARNAFIL, INC. *vs.* PEERLESS INSURANCE COMPANY.

Norfolk. November 2, 1993. - July 14, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Contract*, Insurance, Performance and breach. *Insurance*, Comprehensive liability insurance, Coverage, Insurer's obligation to defend, Notice, Disclaimer of liability. *Notice*, Insurance claim.

On claims by an insured seeking to recover from its liability insurer the costs associated with arbitration between the insured and a third party, summary judgment was incorrectly entered for the insurer where the record demonstrated there remained genuine issues of material fact whether the insured's initiation of the arbitration without notice to the insurer in violation of policy provisions justified the insurer's failure to defend; whether the insurer was prejudiced inasmuch as the insured had prevailed in arbitration; and whether the insurer's failure to investigate and subsequent disclaimer of coverage and reservation of rights was a violation of its duty to defend. [302-306] O'CONNOR, J., dissenting, with whom LYNCH, J., joined.

Summary judgment was properly entered for an insurer on claims brought by an insured where the policies in question did not provide the coverage as claimed and where any reliance by the insured on alleged misrepresentations as to coverage by the insurer's agent were unreasonable in the circumstances. [306-307]

A plaintiff's motion to amend its complaint, filed after the defendant's motions for summary judgment had been allowed, was properly denied, in the judge's discretion. [307]

CIVIL ACTION commenced in the Superior Court Department on June 15, 1988.

The case was heard by *Andrew G. Meyer*, J., on a motion for summary judgment. Motions for leave to amend the complaint and for entry of separate and final judgment were heard by *Gordon L. Doerfer*, J., and *Elizabeth B. Donovan*, J., respectively.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John B. Miller* for the plaintiff.

*Carol A. Griffin* (*John A. Sakakeeny* with her) for the defendant.

GREANEY, J. This case is before us on the plaintiff's application for further appellate review following a decision by the Appeals Court reversing in part and affirming in part a summary judgment in the Superior Court in favor of the defendant Peerless Insurance Company (Peerless). 34 Mass. App. Ct. 248 (1993). The plaintiff, Sarnafil, Inc. (Sarnafil), seeks reimbursement from Peerless for legal fees and expenses Sarnafil incurred in connection with an arbitration proceeding in which D.C. Taylor Company (Taylor) was Sarnafil's opponent, and in connection with a subsequent court action to confirm the arbitrator's award (counts I and VI). In connection with those two counts, Sarnafil contends that two insurance policies issued to it by Peerless require Peerless to reimburse Sarnafil. One is a comprehensive general liability policy and the other is a commercial umbrella policy.

Sarnafil also seeks damages from Peerless based on an alleged misrepresentation by A.E. Barnes and Company Insurance Agency, Inc. (Barnes), as agent for Peerless, that the two policies contain coverage for expenses that might be incurred by Sarnafil in preventing property damage for which Sarnafil might be liable (loss prevention measures) (counts II, IV, and VII). Peerless moved for summary judgment on counts I, II, IV, VI, and VII and a judge in the Superior Court allowed the motion. We reverse as to counts I and VI (defense costs), and affirm as to counts II, IV, and VII (misrepresentation as to coverage of loss prevention costs).

Sarnafil's claim for defense costs turns on the significance of a number of communications between Sarnafil and Peerless. The nature and the dates of these communications are undisputed, but the parties disagree as to the factual inferences that can be drawn from these communications regarding Peerless's notice of Sarnafil's claim and regarding

breaches by both parties of the terms of the policies. Hence, although the Superior Court judge's statement that "[t]he facts material to Sarnafil's claim . . . [were] not in dispute" was in a sense correct, the Appeals Court was more accurate in stating that a "massive amount of material [was] presented to the motion judge by both parties, much of it conflicting." 34 Mass. App. Ct. at 249. We shall set forth below the uncontested facts before discussing the significance of those facts. First, we shall identify the relevant provisions of the two insurance policies. Then we shall set forth the significant facts relating to the claim for reimbursement of defense costs. We shall recite the facts especially relevant to the misrepresentation of coverage claims when we discuss those claims near the end of this opinion.

Both policies provide liability coverage for property damage, but exclude damage to "[Sarnafil's] products arising out of such products or any part of such products." Contrary to Sarnafil's original belief, loss prevention measures were not covered. Sarnafil asserts, and Peerless appears to agree, that both policies require Peerless to defend Sarnafil against suits alleging covered property damage. We shall assume that both policies contain "obligation to defend" provisions.[1] Fi-

---

[1]The comprehensive general liability policy provides: "The company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages because of . . . .property damage to which this insurance applies caused by an occurrence and the company shall have the *right* to defend any suit against the insured seeking damages on account of such . . . property damage even if any of the allegations of the suit are groundless, false or fraudulent . . . *but the company shall not be obligated* to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements" (emphasis added).

The umbrella liability policy provides: "II. DEFENSE SETTLEMENT: With respect to any occurrence not covered by the underlying policies listed in the schedule of underlying insurance . . . but covered by the terms and conditions of this policy . . . the company shall . . . defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . . ."

No contention is made by Peerless that the comprehensive general liability policy gives Peerless only the right, but not the obligation, to defend

nally, there are two provisions in both policies imposing obligations on Sarnafil. One such provision is that Sarnafil "shall not, except at [its] own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident"; we shall refer to this requirement as the voluntary payment provision. The other provision, which we will call the notice provision, is that "[i]f claim is made or suit is brought against [Sarnafil], [Sarnafil] shall immediately forward to [Peerless] every demand, notice, summons or other process received by [it] or [its] representative."

Sarnafil supplied roofing membrane and adhesive to attach that membrane to a roof at Kansas City International Airport. Taylor performed the installation. On September 7, 1984, the membrane came loose from the roof, resulting in claims of damage to the membrane and other portions of the roof. The occurrence involved loss of property supplied by Sarnafil which was not covered under Peerless's policies, but, based on materials in the record, a reasonable fact finder could conclude that there was damage to speaker boxes, insulation, coping caps, antennae and fasteners owned by a third party, which were covered by the policies. Sarnafil and Taylor participated in efforts to prevent further damage, thereby also incurring loss prevention costs. Later in September, representatives of Sarnafil and Peerless met. They discussed the damage at the airport, and the Peerless representatives were given photographs of the damage.

Sarnafil received a letter dated September 20, 1984, from Taylor stating that Taylor held Sarnafil responsible for the damage and repairs at the airport. Taylor also forwarded Sarnafil an architect's letter stating that responsibility for the repairs, including repair of "damage to the existing building," lay with Taylor and Sarnafil. On September 27, Sarnafil forwarded copies of those two letters to Barnes (the agency) and requested "a written acknowledgement of policy

---

Sarnafil, or that the umbrella policy did not oblige Peerless to defend Sarnafil with respect to Taylor's claims.

coverage and a defense to these claims forthwith." As of September 28, the date of a meeting of Peerless personnel, Peerless concluded, on the basis of an initial investigation, that Sarnafil's policies did not provide Sarnafil with liability coverage for the damage at the airport. There is material in the record, however, indicating that by October 1, 1984, Peerless knew, or reasonably should have known, that Taylor's claim included property which was not Sarnafil's product, and was, therefore, covered by Peerless's policies, and that there was an urgent need for costly repairs to be performed before winter to avoid the possibility of a substantially greater expense to Sarnafil should the repairs be delayed. Peerless also could be found to have known that the matter of potential liability was of great concern to Sarnafil because the same roofing material had been used on hundreds of other roofs. Moreover, Peerless was the liability insurer with respect to many of those other roofs.

On October 4, 1984, Peerless sent a letter to Sarnafil reserving its rights under the policies and promising a prompt investigation. However, there is material in the record indicating that Peerless made no investigation. Throughout October, Sarnafil conferred with Taylor and airport officials about proposals to deal with the emergency situation, keeping Peerless informed and repeatedly seeking Peerless's acknowledgement of coverage.

Sarnafil again wrote to Peerless on October 15, 1984, stating that Sarnafil had sent all the information Peerless had requested; that Sarnafil continued to contend that it had coverage under the policies; that Sarnafil would proceed as it thought best; and that Sarnafil "intend[ed] to hold Peerless fully responsible for all costs in assessing, analyzing, settling, and/or defending against the claim made by [Taylor] and the [airport], including Sarnafil's attorneys' fees, all of which are included in coverage under the policy issued by Peerless."

On October 24, 1984, Sarnafil's counsel wrote to Peerless's counsel and enclosed a copy of a proposal to the airport for repair of the roof damage. The proposed repairs included items that had not been furnished by Sarnafil which came

within the coverage provided by Peerless's policies. On November 1, 1984, Sarnafil's counsel sent Peerless another letter stating that the airport's architects had "concluded that there is damage to the structure itself which may or will require replacement of the roof system. Such property damage is clearly covered under the [comprehensive general liability] policy issued by Peerless to Sarnafil." This letter reiterated that Sarnafil intended to hold Peerless responsible for its defense expenses, including attorney's fees.

By November 13, 1984, Sarnafil had not received a response to its letters of October 15, October 24, and November 1. On or about November 13, 1984, Taylor informed Sarnafil of its intention to sue Sarnafil in the United States District Court in Iowa. In the view of Sarnafil, the roof construction agreement between Sarnafil and Taylor provided for arbitration in Massachusetts of disputes under the agreement. On November 14, 1984, without having sought authorization from Peerless, Sarnafil filed a demand for arbitration in Massachusetts. On November 20, 1984, Peerless wrote to Sarnafil that it was engaged in a "comprehensive review and analysis of the coverage questions." On December 7, 1984, Taylor filed its submission to arbitration and counterclaim against Sarnafil. The relevant portion of Taylor's counterclaim read as follows: "Because of the defects in specificiations [sic] and materials supplied by Sarnafil for the roofing project at the Kansas City International Airport and because of Sarnafil's breaches of warranty, D.C. Taylor has incurred and will continue to incur damages in effecting repairs demanded by the owner."

On December 18, 1984, Peerless, still unaware of the pending arbitration between Sarnafil and Taylor, wrote a letter to Sarnafil's counsel which contained the following:

"Based on the information presently available to us, it is our position that no coverage is afforded under either of the . . . policies for any of the claims which have thus far been made against your client. As further developments regarding this matter occur and more spe-

cific claims are made against Sarnafil, we will be pleased to review the question of coverage under these policies.

"We wish to advise you that no action taken by this company [in] the course of investigating any of these matters is to be construed as a waiver of any rights it may have under the . . . policies. We also wish to advise you that we reserve any and all rights we may have to disclaim coverage, for any of the above-mentioned reasons or for any other reason. Finally, nothing set forth in this letter is to be construed as a waiver or relinquishment of any rights of this company under the . . . policies whether specified herein or not, and no act or acts of this company, its agents, servants or attorneys is to be so construed."

Peerless's assessment of the coverage was described as being based on several factors, the most significant of which were the policies' exclusion of coverage for damage to Sarnafil's own products (materials furnished by Sarnafil) and the policies' lack of coverage for loss prevention measures.

Peerless was not informed of Sarnafil's demand for arbitration until April, 1985, after Peerless had brought a declaratory judgment action in the Superior Court seeking a determination as to coverage and defense costs.[2] Sarnafil did not send Peerless a copy of Taylor's counterclaim until after the arbitration proceedings, which involved twenty-six days of hearing, were completed in 1986. On September 23, 1986, the arbitrator rendered a decision in favor of Sarnafil, finding that the adhesive supplied by Sarnafil was not defective, but that it had been improperly applied by Taylor, and awarding substantial damages to Sarnafil. Sarnafil then commenced an action to confirm the arbitrator's award, which action was dismissed by agreement of the parties.

---

[2]The action was dismissed by agreement pending the outcome of the arbitration proceedings.

1. Sarnafil's first claim is for reimbursement of the costs associated with its preparation for, and participation in, the arbitration proceedings and the action to confirm the arbitrator's award. Peerless is liable for those costs, Sarnafil contends, because Peerless failed in an obligation to provide representation in connection with those proceedings, including prehearing investigation. We agree with the Appeals Court that, "[t]o the extent that initiating the arbitration involved an expenditure of funds for legal representation before the counterclaim was filed, which expenditure was both voluntary and for a purpose other than defending a claim covered by the policies, Sarnafil is not entitled to reimbursement of those funds." 34 Mass. App. Ct. at 253. We consider, however, Sarnafil's claim for reimbursement for the costs associated with the defense of the counterclaim in the arbitration. The over-all issue is whether Sarnafil's breach of the voluntary payment and notice provisions of the policies justify Peerless's failure to offer a defense to Sarnafil.

Although Sarnafil was contractually obligated to notify Peerless of the initiation of arbitration and the filing of Taylor's counterclaim, resolution of certain factual questions in Sarnafil's favor could be found to excuse Sarnafil from any requirements imposed on it under the policies, and to impose on Peerless liability for some part of the cost of defending the counterclaim. We have previously stated that "the violation of a policy provision should bar coverage only where the breach frustrates the purpose underlying that provision." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 123 (1991). There are factual disputes over whether Peerless had adequate "opportunity to protect its interests," *id.*, whether Peerless acted throughout in good faith, and whether it actually suffered any prejudice as a result of Sarnafil's actions. Keeping in mind also that an insured's purchase of insurance is made in part to obtain assurance of a defense where needed, there is controversy whether Sarnafil's violations frustrated the purposes of the notice and voluntary payment provisions.

Peerless had, on October 4, 1984, written to Sarnafil reserving its rights on the coverage issue, and had promised that it would "promptly and diligently attempt to ascertain factual information" to resolve what a fact finder could reasonably conclude were both the coverage and defense questions. As has been noted, there are materials in the record from which a fact finder could conclude that, as of October 4, 1984, Peerless knew, or reasonably should have known, that Taylor's claims encompassed damage to property which was not a product of Sarnafil, and that there was, therefore, coverage under the policies. Also, as has been noted, there is further indication that, despite Peerless's promise of a prompt and diligent investigation, Peerless made no thorough investigation, and that, in fact, as early as September 28, 1984, Peerless had concluded that there was no coverage.[3] Sarnafil's several subsequent communications, anxiously seeking assurances of coverage for the property damage claims, and putting Peerless on notice that Sarnafil might have to act unilaterally to protect its own interests against Taylor's claim went unheeded except for a November 20, 1984, communication by Peerless indicating that it was still reviewing the situation, and the final communication of December 18, 1984, that "no coverage is afforded under either of the . . . policies."

We agree with the Appeals Court that a fact finder could reasonably conclude "that Peerless's failure to investigate the facts or inform Sarnafil of its decision on coverage by December 7, 1984, could reasonably have been found to be a violation of the duty of good faith justifying Sarnafil in regarding Peerless's silence, in all the circumstances, as the

---

[3]Burton D. Reed, Jr., who on October 3, 1989, was the president and chief operating officer of Peerless, testified at his deposition that, beginning in December, 1983, he was the regional vice-president of the Massachusetts regional office of Peerless; that "as [of] September 28, 1984, the date of [a] meeting [in Woburn], Peerless maintained there was no coverage"; that "[t]he claim department [of Peerless] in [its] initial investigation determined that there was no coverage under the [insurance] contract[s with Sarnafil] and so informed the agent"; and that he did not know whether Peerless's position had ever been communicated to Sarnafil.

equivalent of a disclaimer of coverage. The disclaimer could be found to have been unjustified if in fact there was coverage under the policies, and if Peerless knew or should have known that to be so." 34 Mass. App. Ct. at 255. A fact finder could reasonably conclude that Peerless's December 18, 1984 letter, couched as it was in terms of "no coverage is afforded," amounted to an actual disclaimer of coverage,[4] a conclusion which had been reached by Peerless by December 7, 1984, when Taylor filed its counterclaim.[5] A fact finder could also reasonably conclude that Peerless's reservations of rights constituted a purposeful effort to avoid undertaking Sarnafil's defense against Taylor's claim.

As to the last issue, it must be emphasized that the reservation of rights would not have excused Peerless's duty to protect Sarnafil while Peerless investigated to determine whether coverage existed. This duty is made clear by our cases. As we stated in *Restighini* v. *Hanagan*, 302 Mass. 151, 153-154 (1939), "The company could, pending ascertainment of the essential facts pertinent to its liability under the policy, take the usual measures in defense of the actions without barring itself from subsequently withdrawing when it discovered that the contract of insurance did not cover the [insured's claim]." See *Salonen* v. *Paanenen*, 320 Mass. 568, 573 (1947) ("[w]here an insurer seasonably notifies its insured that it is *continuing to defend* the case subject to its right to disclaim later . . ."); *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 276 (1970). The duty is an obvious one. Were it otherwise, it would be possible for an insurer, as could be found here, to reserve its rights after a notice of a

---

[4]A claims manager for Peerless, who was involved in discussions with Sarnafil, was asked at a deposition whether the December 18 letter was "a denial letter" and responded, "Yes, this [the letter] would be a denial of coverage."

[5]Further, the relevant portion of the Taylor counterclaim, quoted previously in the text, is broad and general and would not have given Peerless any more information regarding coverage of the claim than it already had prior to December 7. It cannot be maintained, therefore, that knowledge of the language of Taylor's counterclaim would have expanded Peerless's basis of knowledge in any significant way.

claim, and then to sit back and essentially do nothing, even after receiving notice that indicated that the claim was arguably covered. This would be so despite the fact that in such circumstances an insured is required to choose between itself doing nothing, allowing costs for which it might be liable to mount, or itself to take on the defense. An insurer which reserves its rights and takes no action in defense of its insured, when it knew, or should have known, of a covered claim, or which fails to investigate diligently, despite repeated claims of coverage and requests for a defense from an insured facing demands for immediate action, could be found to have committed a breach of the duty to its insured.[6] Such a breach on the part of an insurer could be found to excuse an insured's failure to comply with the notice or cooperation provisions of the policy.

Finally, apart from the factual considerations just discussed, before Peerless could be relieved of responsibility based on Sarnafil's violations of insurance provisions, Peerless would have to show that it had incurred actual prejudice. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, *supra* at 122-123. *Darcy* v. *Hartford Ins. Co.*, 407 Mass. 481, 491 (1990). "In view of the agreement between Taylor and Sarnafil calling

---

[6]Similar circumstances were present in the case of *Chemical Applications Co.* v. *Home Indem. Co.*, 425 F. Supp. 777 (D. Mass. 1977). Citing Massachusetts cases, the court in *Chemical Applications Co.*, *supra* at 779, required an insurer to pay for environmental clean-up costs incurred by its insured. The insured had immediately notified its insurer of an oil spill, a covered occurrence. The insurer did not respond for one month after the event, at which time the insured proceeded with the cleanup under heavy governmental and public pressure. When the insured claimed that its costs should be paid by its insurer, the insurer raised as defenses the lack of a formal suit and the insured's voluntary assumption of costs, in violation of a voluntary payment provision of the insurance contract. The court rejected the insurer's arguments, noting that the effect of the voluntary payment prohibition was to condition the insurer's liability on an event over which it had control. *Id.* at 779. Therefore, "the good faith and reasonableness in the exercise of [the insured's] rights over the occurrence of the condition must be understood." *Id.* On the facts of the case, "the insurer . . . was bound to agree to reasonable action." *Id.* The insured's actions minimized the cost to the insurer, and the insurer therefore had an obligation to agree to those actions. *Id.*

for arbitration of the dispute, the imminence of litigation in Iowa at the time arbitration was filed, and the successful result Sarnafil achieved in the arbitration, on the one hand, and the length of delay in giving notice, on the other, prejudice was an issue of fact for trial." 34 Mass. App. Ct. at 254.

The dissent rests on the premise that Peerless did nothing more than properly reserve its rights throughout, and that all of Peerless's conduct, when considered in light of the reservation, was faultless. The case cannot be reduced to such a simple syllogism. To do so requires that all contested issues of fact be resolved in Peerless's favor, and that it be found to have acted throughout in good faith. That, obviously, is not the standard for summary judgment. It may very well be that Peerless will prevail at trial based on Sarnafil's breaches, a showing of prejudice by Peerless, or a finding, in the sense argued for by the dissent, that Peerless had acted properly in refusing to accept, even conditionally, a duty to defend. These questions, and all the other issues that have been discussed, are in controversy, and their proper resolution requires the determination of factual matters by a fact finder.

2. We turn now to Sarnafil's claims, set forth in counts II, IV, and VII of its complaint, that it is entitled to damages from Peerless because of a representation by Barnes, the insurance agency, that the Peerless policies would cover expenses that might be incurred by Sarnafil in preventing property damage for which Sarnafil could be liable (i.e., loss prevention measures). It is clear that the policies do not provide coverage for expenses incurred in taking loss prevention measures. Sarnafil claims that, in reliance on Barnes's misrepresentation, it cancelled another policy, issued by Zurich Insurance Company, which contained coverage for loss prevention measures. We agree with the Superior Court judge, as did the Appeals Court, 34 Mass. App. Ct. at 249 n.2, that any reliance by Sarnafil "on Barnes's alleged statements was unreasonable. The coverage provisions in the Peerless policies are only two or three pages long, and loss prevention cover-

age is distinctly absent; in such circumstances, a business entity such as Sarnafil should read its policies rather than rely on representations by an agent. See generally, Annot., 32 A.L.R. 3d 661, 713-24."

3. One appellate issue remains. After Peerless's summary judgment motion was allowed, Sarnafil moved to amend its complaint by adding new allegations of fact. Another judge in the Superior Court denied that motion. We have considered Sarnafil's argument on this issue, and we agree with the Appeals Court, 34 Mass. App. Ct. at 249 & n.3, that the judge did not abuse his discretion in denying Sarnafil's motion to amend its complaint. See generally *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288 (1977).

4. The judgment of the Superior Court is affirmed as to counts II, IV, and VII. The judgment is reversed as to counts I and VI, and the case is remanded for further proceedings in accordance with this decision.

*So ordered.*


O'CONNOR, J. (dissenting in part, with whom Lynch, J., joins). The policies provide Sarnafil with liability coverage for damage to property. Coverage does not extend, however, to damage to Sarnafil's products arising out of those products in whole or in part. Sarnafil supplied, and Taylor installed, roofing membrane and adhesive to attach the membrane to an airport roof. As a result of the membrane's coming loose on September 7, 1984, Taylor wrote to Sarnafil on September 20 that Taylor intended to hold Sarnafil responsible for unspecified, unidentified "damage and repairs at the airport." Taylor also sent Sarnafil a copy of a letter from an architect in which the architect opined that Taylor and Sarnafil would be responsible for unidentified repairs, including repair of "damage to the existing building." On September 27, Sarnafil sent copies of those letters to Barnes (the agency) and requested that coverage be acknowledged.

Regardless of when those letters were received by Peerless, the information contained in them may have suggested the possibility or even probability that specific claims of detailed damage would be forthcoming, but the letters did not tell Sarnafil or Peerless whether Taylor's claims would relate in whole or in part to items of property that had not been furnished by Sarnafil and would therefore probably be within the policies' liability coverage. In those circumstances, several options were available to Peerless. Peerless could have categorically denied (disclaimed) all coverage of Sarnafil's losses due to airport damage and announced its decision not to defend Sarnafil with respect to any claim that might be made against Sarnafil. Had Peerless done so, it would have run the risk of breaching its contractual duty to cover Sarnafil's liability for damage to property other than Sarnafil's product, and its duty to defend Sarnafil. Also, Peerless would have forfeited its contractual right to control the investigation and resolution of claims that it, as insurer, might ultimately have to pay. See *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 682 (1964), and cases cited. In the alternative, Peerless could have remained silent, allowed time to pass, and in the meanwhile conducted extensive investigation, thereby running the risk that ultimately a judge, based on principles of estoppel or waiver, would rule that, having led Sarnafil to rely exclusively on Peerless's protection at a time when Sarnafil could have protected itself, Peerless, in fairness, should not later be permitted to withdraw that protection even if and when it has become clear that Sarnafil's losses in whole or in part were not within the coverage of the policies. See *Salonen* v. *Paanenen*, 320 Mass. 568, 572 (1947). Neither of those options would or should have been satisfactory to an insurer in the circumstances of this case.

Peerless, therefore, chose a third alternative. On October 4, 1984, Peerless wrote to Sarnafil as follows:

"Based on the limited information presently available to us, it is possible your policy with our Company may not provide coverage or protect you from or against any

claims or expenses incurred in connection with the situation outlined in your [September] letter.

"We are reserving our rights under the policy because there are many unanswered questions pertaining to the scope and nature of coverage afforded a liability assured under the policy.

"We will promptly and diligently attempt to ascertain factual information to help us resolve these questions."

That kind of letter, generally known as a reservation of rights letter, avoids the aforementioned risks and has been approved by this court on several occasions. See *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 276 (1970); *Magoun* v. *Liberty Mut. Ins. Co.*, *supra*; *Salonen* v. *Paanenen, supra* at 572-573. As the court said in *Salonen, supra* at 573, "Where an insurer seasonably notifies its insured that it is continuing to [investigate or] defend the case subject to its right to disclaim later, the insured is in no position to say that he has been misled, and can take necessary steps to protect his rights. In this situation the basis for an estoppel is lacking." Peerless's October 4 letter in no way implied a refusal to defend Sarnafil, should a defense become necessary. Indeed, the very purpose of a reservation of rights letter, approved by this court in numerous cases, is to allow an insurer to investigate and to defend its insured without running the risk of misleading its insured and then being estopped from disclaiming coverage.[1]

---

[1]The court states, *ante* at 303, "Peerless had, on October 4, 1984, written to Sarnafil reserving its rights on the coverage issue, and had promised that it would 'promptly and diligently attempt to ascertain factual information' to resolve what a fact finder could reasonably conclude were both the coverage *and defense* questions" (emphasis added). Contrary to the court's assertion, the October 4 letter made no reference to defense questions. The words contained in the letter, "or protect you from or against any claims or expenses incurred in connection with the situation outlined in your letter" was an obvious reference to the expenses incurred or anticipated by Sarnafil in connection with emergency loss prevention measures. The existence of coverage for such expenses was in dispute. The sole focus

In response to Peerless's October 4 reservation of rights letter, Sarnafil wrote to Peerless on October 15 conveying no new information concerning the airport damage but insisting there was coverage, and on October 24, Sarnafil's counsel sent Peerless's counsel a copy of a "proposal to the airport for repair of the roof damage. The proposed repairs included items that had not been furnished by Sarnafil." *Ante* at 299. In the October 24 communication, therefore, Sarnafil for the first time identified some items of damage which, *if ultimately established*, would result in liability covered by the policies. Finally, on November 1, Sarnafil's counsel wrote to Peerless's counsel that the airport's architects had concluded that there was "damage to the structure itself" which presumably was in addition to damage to items that had been furnished by Sarnafil. Having reserved its right to disclaim at a later date by its October 4 letter, Peerless did not communicate with Sarnafil in writing again until November 20, 1984, when it wrote that it was studying the coverage question. Significantly, nothing Peerless did or failed to do between October 4 and November 20 reasonably communicated to Sarnafil that Peerless had abandoned its reservation of the right to disclaim in the future and that instead it was disclaiming coverage or was refusing to defend Sarnafil. Peerless said or did nothing that would release Sarnafil from its contractual duty to notify Peerless of any claims made against it.

Peerless's next written communication with Sarnafil was on December 18, 1984. On that date, Peerless was totally unaware that on November 14, without having sought Peerless's authorization, Sarnafil had filed a demand for arbitration of its dispute with Taylor as to liability for airport damage. Peerless was also unaware that on December 7, Taylor had counterclaimed that Sarnafil's adhesive had been defective, entitling Taylor to damages. On December 18, Peerless

of the letter was the preservation of Peerless's right to disclaim responsibility to indemnify Sarnafil for losses Sarnafil might suffer despite any investigation Peerless might make into the "unanswered questions pertaining to the scope and nature of coverage afforded [Sarnafil] under the policy."

wrote Sarnafil a letter containing the following relevant paragraphs:

> "Based on the information presently available to us, it is our position that no coverage is afforded under either of the . . . policies for any of the claims which have thus far been made against your client. As further developments regarding this matter occur and more specific claims are made against [the insured], we will be pleased to review the question of coverage under these policies.

> "We wish to advise you that no action taken by this company [in] the course of investigating any of these matters is to be construed as a waiver of any rights it may have under the . . . policies. We also wish to advise you that we reserve any and all rights we may have to disclaim coverage, for any of the above-mentioned reasons or for any other reason. Finally, nothing set forth in this letter is to be construed as a waiver or relinquishment of any rights of this company under the . . . policies whether specified herein or not, and no act or acts of this company, its agents, servants or attorneys is to be so construed."

Peerless's assessment of the coverage was described as being based on several factors, the most significant of which were the policies' exclusion of coverage for damage to Sarnafil's own products (materials furnished by Sarnafil) and the policies' lack of coverage for loss prevention measures.

Like Peerless's October 4 letter, Peerless's December 18, 1984, letter was a reservation of rights letter. Furthermore, like the October 4 letter, the December 18 letter in no way implied a refusal to provide a defense to Sarnafil. Sarnafil could not reasonably have construed that letter either as a disclaimer of coverage or as a refusal to defend Sarnafil with respect to any claim and especially with respect to Taylor's counterclaim in arbitration, about which, as Sarnafil knew, Peerless was totally ignorant. The letter did not simply state

that "no coverage is afforded under either of the . . . policies" as the court implies. *Ante* at 303. Instead, the letter expressly stated that Peerless's position was "[b]ased on the information presently available to [it]," that is, that it was not premised on the specific claims contained in Taylor's counterclaim of which Peerless was unaware. Indeed, the letter made clear that Peerless's position as to coverage related only to "any of the claims which [Peerless knew] ha[d] thus far been made against [Sarnafil]." In addition, the December 18 letter clearly notified Sarnafil that "as . . . more specific claims are made," which would include Taylor's counterclaim in arbitration, Peerless "will be pleased to review the question of coverage." Yet, as the summary judgment materials demonstrate, Peerless was not informed of Sarnafil's demand for arbitration until months later, in April, 1985, after Peerless had brought a declaratory judgment action seeking a determination as to coverage and defense costs. Sarnafil did not send Peerless a copy of Taylor's counterclaim until after the arbitration proceeding was completed in 1986.

Any obligation that Peerless might have to reimburse Sarnafil for its expenses of preparation for, and participation in, the arbitration proceedings, and for its expenses related to the commencement of an action to confirm the arbitrator's award, could only derive from an unfulfilled obligation on Peerless's part to provide representation in connection with those proceedings, including prehearing investigation. The critical question, then, is whether Peerless owed Sarnafil a duty to represent Sarnafil in the arbitration proceedings because, if Peerless did not breach such a duty, there is no basis on which an obligation to reimburse Sarnafil's defense costs may be posited.

Both policies provide that "[i]f a claim is made or suit is brought against [Sarnafil], [Sarnafil] shall immediately forward to [Peerless] every demand, notice, summons or other process received by [it] and [its] representative." The court acknowledges that "Sarnafil was contractually obligated to notify Peerless of the initiation of arbitration and the filing of Taylor's counterclaim." *Ante* at 302. The court also states, .

however, that "the violation of a policy provision should bar coverage only where the breach frustrates the purpose underlying that provision," and concludes that it is apparent from materials in the record that, in this case, a reasonable fact finder could find that Sarnafil's secrecy about the arbitration proceeding, including Taylor's counterclaim, did not frustrate the purpose of the policies' notice of claim provisions. *Ante* at 303. The court is correct in saying that coverage is barred only when the insured's breach of policy provisions frustrates their purpose, but the court is wrong when it says that, here, a reasonable fact finder could find that Sarnafil's policy violations did not frustrate the purpose of the provisions.

A manifest purpose of a notice of claim provision is to give the insurer an opportunity to analyze specific claims against its insured in order that it fairly might determine whether it is obliged under its policy to provide a defense to its insured. A second purpose is to give the insurer an opportunity, if it decides it is obliged to defend, not only to defend effectively but also to do so in the most cost effective way, perhaps utilizing the services of its own employees. As a matter of law, those objectives were frustrated in this case by Sarnafil's reserving its defense to itself rather than tendering its defense to Peerless, and by Sarnafil's maintaining silence concerning even the existence, let alone the progress, of the arbitration proceeding involving Sarnafil and Taylor. No fact finder could rightly find an absence of prejudice to Peerless, due to Sarnafil's failure to notify Peerless of Taylor's counterclaim, if Peerless was to be held responsible for this payment of Sarnafil's legal expenses over which Peerless had no control.

The court's conclusion that a fact finder could find that Peerless was not prejudiced by Sarnafil's breach of its notice obligations is not the court's only error. The court also seems to reason that a trial is necessary because, based on materials in the record, a fact finder would be warranted in finding that Peerless acted in bad faith because of its "failure to investigate the facts or inform Sarnafil of its decision on coverage by December 7, 1984 [the date Taylor filed its counter-

claim — unknown to Peerless] . . . justifying Sarnafil in regarding Peerless's silence, in all the circumstances, as the equivalent of a disclaimer of coverage [which] disclaimer could be found to have been unjustified if in fact there was coverage under the policies, and if Peerless knew or should have known that to be so." *Ante* at 303-304, quoting *Sarnafil, Inc.* v. *Peerless Ins. Co.*, 34 Mass. App. Ct. 248, 255 (1993). The court also reasons that "[a] fact finder could reasonably conclude that Peerless's December 18 letter, couched as it was in terms of 'no coverage is afforded,' amounted to an actual disclaimer of coverage, a conclusion which had been reached by Peerless by December 7, 1984, when Taylor filed its counterclaim." *Ante* at 304. No worthwhile purpose would be served by a protracted discussion in this dissenting opinion of these several assertions in support of the court's conclusion that summary judgment for Peerless on counts I and VI should not have been ordered. It should be noted, however, that the court points to no authority, and I am aware of none, for the proposition that an insurer's failure to investigate a claim beyond reviewing materials submitted by its insured before it has been made in a court or similar forum, or an insurer's failure to make a decision on coverage within two months after sending the insured a reservation of rights letter, without more, warrants a finding of bad faith which, in turn, warrants either the insured or a fact finder in concluding that the insurer disclaimed. By its decision, unsupported by authority, the court seriously confounds insurance law by blurring the long-recognized and very important distinction between a present disclaimer of coverage and an insurer's reservation of the right to proceed with investigation and the defense of its insured and to disclaim coverage thereafter if further developments establish that the loss is not within the coverage.

When an insurer seeks to defend its insured under a reservation of rights, and the insured is unwilling that the insurer do so, the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs. *Three*

*Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 274-277 (1970). In the present case, however, Sarnafil gave no such option to Peerless. Instead, in violation of its contractual duty, Sarnafil decided, unilaterally and without notice, to conduct its own defense, thereby relieving Peerless of any duty to defend Sarnafil or reimburse it for its defense related costs. It is true, as the court says, *ante* at 304, that "the reservation of rights would not have excused Peerless's duty to protect Sarnafil while Peerless investigated to determine whether coverage existed." However, Peerless's duty to protect Sarnafil was contingent on Sarnafil's notifying Peerless of specific claims having been made, such as Taylor's counterclaim, from which Sarnafil sought protection. Because there was no notice, there was no duty. I dissent from the court's reversal of the judgment as to counts I and VI. This opinion is a "dissent in part" because I agree with the court that the judgment of the Superior Court should be affirmed as to counts II, IV, and VII.