Three Sons, Inc. *vs.* The Phoenix Insurance Company.

Middlesex.     February 3, 1970. — April 13, 1970.

Present: Wilkins, C.J., Spalding, Kirk, Spiegel, & Reardon, JJ.

*Insurance,* General liability insurance, Defence of proceeding against insured. *Equity Pleading and Practice,* Answer. *Public Policy. Laches. Equity Jurisdiction,* Laches. *Words,* "By reason of."

Under a general liability policy insuring a seller of alcoholic beverages to be drunk on the premises against liability for accidental bodily injury or death, but excluding indemnification for "liability imposed upon the insured . . . by reason of any statute . . . pertaining to the sale . . . of any alcoholic beverage," a liability of an insured, to come within the exclusion, must be one directly resulting from a violation of a statute which, without more, is sufficient to impose liability; a liability which might be imposed on the insured in a pending tort

action based upon evidence of the insured's sale of alcoholic beverages to an intoxicated patron in violation of G. L. c. 138, § 69, and in circumstances which warranted findings that the insured was negligent and that his negligence was the proximate cause of injuries to the plaintiff in the action due to the patron's conduct would be grounded on common law negligence and not on the violation of the statute and would not come within the exclusion. [275]

The insured in a general liability insurance policy requiring him to coöperate with the insurer and the insurer to defend any suit against him may, consistent with his duty to coöperate, refuse permission to the insurer to defend a suit against him with full cóntrol of the defence and at the same time to reserve a right to disclaim liability under the policy later, and upon such refusal by the insured, the insurer is obligated to defend the suit without a reservation of a right to disclaim liability if it insists on retaining full control of the defence. [275–277]

Failure of the insurer under a general liability insurance policy to plead illegality as a defence to a suit in equity by the insured for a declaratory decree respecting the insurer's obligations to defend, and to pay any judgments against the insured in, a pending tort action by a third person arising out of the insured's sale of alcoholic beverages to an intoxicated person in violation of G. L. c. 138, § 69, precluded the insurer from raising that defence to the suit where nothing showed illegality or a violation of fundamental public policy in the making or performance of the insurance contract. [277]

Public policy would not preclude the insured in a general liability insurance policy from receiving the indemnity benefits thereunder even though the act of the insured which gave rise to his liability to a third person and the insurer's obligation to indemnify the insured violated a criminal statute. [277–278]

The record of a suit in equity by the insured in a general liability insurance policy for a declaratory decree as to the defendant insurer's obligation thereunder to defend a tort action against the insured and indemnify him against any liability therein showed no prejudice to the defendant from the plaintiff's delay of approximately eighteen months in bringing the suit after the commencement of the tort action, during which period this court ordered the demurrer to the declaration therein to be overruled, and the suit was not barred on the ground of laches. [278–279]

BILL IN EQUITY filed in the Superior Court on February 8, 1968.

The suit was heard by *Collins*, J.

*Joseph J. Hurley* (*Edward J. Murphy* with him) for the defendant.

*Edward J. Barshak* for the plaintiff.

SPALDING, J. This is a bill for declaratory relief seeking to establish the obligations of The Phoenix Insurance Com-

pany (defendant) to defend and pay judgments in pending tort actions. A final decree in favor of the plaintiff was entered from which the defendant appealed. The judge made a report of material facts, and the evidence, all of which is documentary, is reported.

The plaintiff was licensed under G. L. c. 138 as a seller of alcoholic beverages to be drunk on the premises. The defendant insured the plaintiff under a general liability policy, for "all sums which the insured shall become legally obligated to pay as damages because of bodily injury, . . . including death . . . sustained by any person and caused by accident." Under the policy the defendant also undertook to "defend any suit against the insured alleging such injury . . . and seeking damages on account thereof, even if such suit is groundless, false or fraudulent." The policy contained a clause excluding "liability imposed upon the insured or any indemnitee, as a person or organization engaged in the business of manufacturing, selling or distributing alcoholic beverages, or as an owner or lessor of premises used for such purposes, *by reason of any statute* or ordinance pertaining to the sale, gift, distribution or use of any alcoholic beverage . . ." (emphasis added).

On August 29, 1966, one Gregory H. Adamian brought an action in tort against the plaintiff. In this action he sought to recover for injuries suffered by him on June 27, 1966, when an automobile in which he was riding collided with an automobile driven by one Coomber. He also sought in this action, as administrator of his wife's estate, to recover for her death and conscious suffering. Adamian's declaration averred that the plaintiff had negligently sold alcoholic beverages to Coomber, a customer in its restaurant, in violation of its duty to the public and G. L. c. 138, § 69. Because of this breach of duty on the part of the plaintiff, it is alleged, Coomber left the plaintiff's premises in an intoxicated state and proceeded to operate a motor vehicle. While so doing and because of his intoxicated condition his car became involved in the collision, causing the injuries and death which are the subject of the Adamian declaration.

Adamian's declaration was upheld in *Adamian* v. *Three Sons, Inc.* 353 Mass. 498. Domina, a passenger in Coomber's car, brought a similar action against the plaintiff. Both actions are now pending. It was agreed that "the situation as between plaintiff and Phoenix is in all relevant aspects the same in respect of the Domina action as in the Adamian action." Both Adamian and Domina agreed to be bound by such decree as might be entered in the present suit.

Upon the commencement of Adamian's action, the plaintiff immediately forwarded the writ to the defendant. The defendant returned the writ, contending that under the exclusion clause the Adamian action was not within the policy. Thereafter, the plaintiff forwarded the declaration to the defendant. The plaintiff took the position that the defendant was obligated to defend the action because any liability of the plaintiff arose, not by reason of statute, but out of common law negligence. Considerable correspondence ensued. The defendant agreed to defend, subject to a reservation of rights concerning its obligation to indemnify the plaintiff under the policy, but insisted on full control of the defence. The defendant's attorney entered an appearance for that purpose. The plaintiff agreed to the defendant's full control of the defence, but not to its reservation or nonwaiver of rights under the policy. Finally on November 29, 1966, the defendant's attorney withdrew because the plaintiff was unwilling to allow the defendant to conduct the defence with full control and still reserve its liability under the policy.

Thereafter the plaintiff brought this bill (1) for declaratory relief to establish the defendant's obligation to defend the plaintiff in the Adamian action and to pay any judgment incurred up to the limits of the policy and (2) for injunctions ordering the defendant to defend the plaintiff, to pay any judgment entered therein, and to pay the plaintiff's legal expenses incurred in the defence of the suits. The court entered a final decree declaring that the plaintiff's insurance covered the facts alleged in the Adamian declaration, that the defendant was obligated to defend the plaintiff in this

action without reservation of right so long as it insisted on retaining control of the defence, and that legal expenses totaling $4,350 be paid the plaintiff.

1. The defendant argues that the exclusion clause of the policy renders it inapplicable to the actions pending against the plaintiff. The policy excludes indemnification for "liability imposed . . . by reason of any statute or ordinance pertaining to . . . any alcoholic beverage." The defendant does not argue that the potential liability of the plaintiff is imposed by statute. Rather it urges that the scope of the exclusion is not limited to instances of liability directly imposed by statute, but extends to liability in any situation in which a statute pertaining to alcoholic beverages is also violated. In its view the use of the words, "by reason of," rather than "by" indicated the intention of the parties to exclude a broader class of liability. However, this argument cannot be reconciled with the plain meaning of "by reason of." The words, "liability imposed . . . by reason of any statute," clearly imports a direct causal relation between the fact of liability and the violation of a statute. To qualify for this exclusion, liability must directly result from the violation of a statute, in the sense that the violation, without more, is sufficient to impose liability. Nothing in G. L. c. 138, § 69, imposes civil liability. Indeed, this provision replaced the dramshop statutes, which did directly impose civil liability, when they were repealed by St. 1933, c. 376, § 2. As we noted in the *Adamian* case, at p. 499, a violation of c. 138, § 69, may "be some evidence of the . . . [plaintiff's] negligence as to all consequences the statute was intended to prevent." It is clear that the basis of Adamian's tort action is grounded in the common law doctrine of negligence and not on the violation of a statute. The judge rightly ruled that the Adamian action was not within the exclusion clause of the policy.

2. The defendant argues that its obligations under the policy were terminated by the plaintiff's breach of its contractual duty to coöperate. The alleged breach consisted of the plaintiff's refusal to permit the defendant to defend

the case with full control, under a reservation of rights. The judge found that the plaintiff "has complied with all policy conditions in respect of notice and co-operation." The question, therefore, is whether under the insured's duty to coöperate it may refuse to allow the insurer to defend and control a suit under a reservation of rights. The defendant argues that the insured has no such right. We disagree. In *Salonen* v. *Paananen*, 320 Mass. 568, it was held that the defence by the insurer (under a reservation of rights) of an action against an insured will not estop the insurer from subsequently disclaiming liability. This result resolved the dilemma facing an insurer who was obligated to defend all suits but who might later have grounds to disclaim liability. A reservation of rights in such circumstances notifies the insured that the insurer's defence is subject to the later right to disclaim liability. The insured thus can take the necessary steps to protect his rights, and has no basis for claiming an estoppel. A reservation of rights and insistence on retaining control of the defence is another matter. As we stated in the *Salonen* case, "We are not to be understood as holding that an insurer may reserve its rights to disclaim liability in a case and at the same time insist on retaining control of its defence." 320 Mass. at 574. This question was also left open in *Magoun* v. *Liberty Mut. Ins. Co.* 346 Mass. 677. Control of the case by the insurer, when it may later disclaim liability under the policy, means that the insured's rights may be adversely affected. He has no opportunity to control aspects of the case essential to determination of liability or settlement. If liability is established, or a settlement reached, and the insurer has a valid ground for disclaimer, the insured is left with a liability which, had he been able to defend or settle on other terms, might never have existed.

The defendant, however, argues that an insurer, which has reserved its rights, has a right to so control the conduct of a case, subject to the risk that it may be estopped to deny liability if it insists on the right to so control the case and liability is then established. That is, the defendant had a

right to risk, by insisting on control of the litigation, a nullification of its purported reservation of rights.[1] Such a rule does not commend itself to us and finds no support in our cases; nor, so far as we are aware, in those of other jurisdictions. If the reservation of rights is nullified in such circumstances, there is no necessity for the insurer to insist on it. The insurer gains only the right to control the conduct of the case, but nothing more if liability is found or a settlement reached. The statement of this proposition supplies its own answer. The judge, therefore, rightly ruled that the defendant had a duty to defend the plaintiff in the actions at law without a reservation of rights or claim of nonwaiver, so long as it insisted on retaining control of the defence.

3. The defendant argues that public policy bars the plaintiff from coverage under the policy because the plaintiff's conduct giving rise to liability also violates G. L. c. 138, § 69, which, under § 62, is a criminal statute. Enforcement of the insurance contract, it is said, would thus relieve the plaintiff of the consequences of its criminal conduct.

Ordinarily, the defence of illegality must be put in issue by the pleadings. *Barsky* v. *Hansen,* 311 Mass. 14. This the defendant has failed to do. The defendant argues, however, that this case falls within the exception to that rule where the declaration shows that the plaintiff relies upon an illegal contract or violation of law, or upon evidence which shows a contract that is violative of a fundamental principle of public policy. *Gleason* v. *Mann,* 312 Mass. 420, 422. The present contract, an ordinary liability policy, is neither illegal in the making, nor dependent on illegality for its performance. Nothing in the declaration or evidence shows a contract violative of fundamental public policy. The defendant's failure to plead illegality thus prevents it from asserting that defence.

The defendant further argues that public policy precludes

---

[1] There is substantial authority elsewhere that an insurer who defends under a reservation of rights and insists on retaining control of the litigation is estopped later to deny liability. See cases collected in footnote 5 at p. 683 in *Magoun* v. *Liberty Mut. Ins. Co.* 346 Mass. 677.

a person, whose tortious acts also violated a criminal statute, from receiving the benefits of an insurance agreement covering those acts. The defendant relies on the rule that the beneficiary of a life insurance policy cannot recover under the policy where the death of the insured was the result of suicide, murder by the beneficiary, or serious criminal conduct of the insured. *DeMello* v. *John Hancock Mut. Life Ins. Co.* 281 Mass. 190, 196–197, and cases cited. Extension of that principle to the case at bar would mean that an insurance company could avoid its obligation under its policy whenever an insured also violated a criminal statute. The defendant's contention was rejected in *Minasian* v. *Aetna Life Ins. Co.* 295 Mass. 1, 5, where we said that "[i]f the maxim, that no man shall profit from his own wrong, be applied literally, then the slightest negligence . . . would bar recovery. Such a result would be recognized generally as impractical and unjust." We hold that public policy would not be advanced by depriving the plaintiff here of the benefits of the policy.

4. The defendant relies on the defence of laches, which was pleaded. This is an affirmative defence as to which the defendant had the burden of proof. *Massachusetts Linotyping Corp.* v. *Fielding,* 314 Mass. 47, 49. The judge understandably made no findings on this issue, for no evidence directly bearing on the subject was introduced. All that the record reveals that could possibly relate to the issue of laches is the lapse of time between the Adamian action and the present suit, together with the various steps that had been taken in the former. The defendant points out that approximately eighteen months elapsed between the commencement of the Adamian action and the bringing of this bill for declaratory relief. But "[l]aches is not mere delay but delay that works disadvantage to another." *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69. *Security Natl. Bank* v. *General Motors Corp.* 345 Mass. 434, 441. On this record there is nothing to show that the defendant has been prejudiced by the lapse of time. In support of its claim of prejudice the defendant argues that the plaintiff's

delay has substantially altered its position because it is now faced with an adverse ruling on the issue of liability as a result of our decision in *Adamian* v. *Three Sons, Inc.* 353 Mass. 498, 501. This argument is not impressive, for there is no reason to suppose that had the defendant controlled that litigation the result would have been different. The defence of laches has not been established.

<div align="right">

*Decree affirmed with costs of appeal.*