NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12655
SJC-12656

COMMERCE INSURANCE COMPANY  vs.  JUSTINA M. SZAFAROWICZ, special
representative,[1] & others.[2]

JUSTINA M. SZAFAROWICZ, special representative,[3]  vs.  MATTHEW S.
PADOVANO & others.[4]


Worcester.     March 7, 2019. - October 1, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Motor Vehicle, Insurance.  Insurance, Motor vehicle insurance,
Insurer's obligation to defend, Interest.  Practice, Civil,
Wrongful death, Declaratory proceeding, Interest.
Negligence, Wrongful death.  Declaratory Relief.  Interest.
Escrow.


Civil action commenced in the Superior Court Department on
January 21, 2014.

---

[1] Of the estate of David M. Szafarowicz.

[2] Matthew Padovano; Stephen Padovano; and Damion Szafarowicz
and Alysha Szafarowicz, by their mother and next friend, Justina
M. Szafarowicz.

[3] Of the estate of David M. Szafarowicz.

[4] Stephen Padovano and Kona Enterprises, Inc.

A motion to deposit money with the court or in an interest-bearing account was heard by Richard T. Tucker, J.

An application for leave to prosecute an interlocutory appeal was allowed by Ariane D. Vuono, J., in the Appeals Court, and the appeal was reported by her to a panel of that court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Civil action commenced in the Superior Court Department on August 23, 2013.

Motions to stay were heard by David Ricciardone, J., and the case was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

John P. Graceffa (Lawrence M. Slotnick also present) for Commerce Insurance Company.

David R. Bikofsky & Michael K. Gillis (Joseph I. Rogers also present) for Justina M. Szafarowicz & others.

Stephanie V. Corrao & Laura A. Foggan, of the District of Columbia, Richard J. Riley, & Peter C. Kober, for Complex Insurance Claims Litigation Association & another, amici curiae, submitted a brief.

Kim V. Marrkand & Mathilda S. McGee-Tubb, for Massachusetts Insurance and Reinsurance Bar Association, amicus curiae, submitted a brief.

GANTS, C.J.  These appeals present three issues that arise where a motor vehicle insurer recognizes its duty to defend its insureds in a wrongful death action, but does so under a reservation of rights, and then brings a separate action seeking a declaratory judgment that it owes no duty to indemnify its insureds for damages arising from the wrongful death action under the "Optional Bodily Injury To Others" provision of the insurance policy.

As to these three issues, we conclude, first, that there was no abuse of discretion in the judge's denial of the insurer's motions to stay trial in the wrongful death action until the question of coverage had been determined in the declaratory judgment action.

Second, over the insurer's objection, the parties settled the wrongful death action before trial through agreements in which the defendants admitted to negligence, agreed that the amount of damages would be determined through a damages assessment hearing, and assigned all their rights under the insurance policy to the plaintiff.[5]  In return, the plaintiff agreed to release the defendants from liability and seek damages only from the insurer.  Because of the amount of damages assessed (more than $5 million, plus prejudgment interest) and because the policy obligated the insurer to pay postjudgment interest, the insurer moved to deposit with the court the policy limits and the accrued postjudgment interest under Mass. R. Civ. P. 67, 365 Mass. 835 (1974), in an attempt to prevent the continued accrual of postjudgment interest pending resolution of the declaratory judgment action and the insurer's appeal in the wrongful death action.  We conclude that the judge did not abuse

---

[5] We refer to these agreements as "settlement/assignment agreements" throughout this opinion.

his discretion in denying the insurer's motion to deposit these funds.

Third, we conclude that, where the insurer timely objected to the settlement/assignment agreements, and where it is obligated to pay the accrued postjudgment interest on the wrongful death judgment, the insurer may be bound by the amount of that judgment only where a judge determines that the settlement/assignment agreements were reasonable under the circumstances. Here, the settlements were executed with no determination of reasonableness. We therefore vacate the wrongful death judgment and remand the case to the Superior Court for a hearing on the reasonableness of the settlement/assignment agreements.[6]

Background. The relevant factual and procedural background is not materially in dispute. On August 3, 2013, shortly after a verbal altercation at a bar in Leominster, David M. Szafarowicz was struck and killed by a vehicle operated by Matthew Padovano, who later pleaded guilty to voluntary manslaughter in connection with the fatal incident. The vehicle was owned by Matthew's father, Stephen Padovano, who had

---

[6] We acknowledge the amicus briefs submitted by the Complex Insurance Claims Litigation Association and the American Property Casualty Insurance Association, and by the Massachusetts Insurance and Reinsurance Bar Association.

purchased an automobile insurance policy from Commerce Insurance Company (Commerce).[7]

Justina M. Szafarowicz, David's mother, in her capacity as special representative of David's estate (estate), brought a wrongful death action against the Padovanos in the Superior Court, claiming that David's death was caused by Matthew's gross negligence in operating a motor vehicle that was negligently entrusted to him by Stephen.[8]  Under the Commerce insurance policy, Stephen was covered for bodily injury to others by compulsory insurance in the amount of $20,000 per person, and by optional insurance in the additional amount of $480,000 per person.

Commerce acknowledged its duty to defend the Padovanos in the wrongful death action under its policy.[9]  See Metropolitan

---

[7] We refer individually to members of the Padovano and Szafarowicz families by their first names to avoid confusion, but we refer collectively to the Padovanos.

[8] Justina, as special representative of her son's estate (estate), also claimed that Kona Enterprises, Inc. (Kona), which operated the bar where the incident took place, was negligent in failing to provide adequate supervision and security to David at its premises.  The estate reached a settlement with Kona, and it is not a party to this appeal.

[9] The Commerce Insurance Company (Commerce) motor vehicle policy at issue states:

"We [(Commerce)] have the right to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy.  We also

Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 357 (2011) (Morrison), quoting Billings v. Commerce Ins. Co., 458 Mass. 194, 200-201 (2010) ("An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms").

As to its duty to indemnify for damages, Commerce acknowledged its duty to pay the $20,000 in compulsory insurance (and ultimately paid the estate this amount) but issued a reservation of rights regarding the $480,000 in optional insurance. By doing so, Commerce effectively reserved its right to refuse to indemnify the Padovanos beyond $20,000 for damages arising from the wrongful death action if it were determined that David's death was caused by Matthew's intentional act, and was therefore not an "accident" covered by the terms of the policy.[10] See Morrison, 460 Mass. at 357, quoting A.W.

---

have a duty to defend any such lawsuit, even if it is without merit, but our duty to defend ends when we tender, or pay to any claimant or to a court of competent jurisdiction, with the court's permission, the maximum limits of coverage under this policy. We may end our duty to defend at any time during the course of the lawsuit, by tendering, or paying the maximum limits of coverage under the policy, without the need for a judgment or settlement of the lawsuit or a release by the claimant."

[10] Commerce also reserved its rights to refuse to indemnify on the ground that Matthew was not identified as a designated driver on the policy.

Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445 Mass. 502, 527 (2005) (duty to defend "is independent from, and broader than, [the] duty to indemnify"); Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 276 (1970) ("A reservation of rights . . . notifies the insured that the insurer's [defense] is subject to the later right to disclaim liability").

On January 21, 2014, approximately five months after the estate initiated the wrongful death action, Commerce brought a separate declaratory judgment action against the Padovanos and the estate, seeking a declaration from the court that Commerce had no obligation under its optional insurance coverage to indemnify the Padovanos for the damages arising from the fatal incident.  The wrongful death action and the declaratory judgment action were consolidated for discovery purposes only.

On April 21, 2016, less than three weeks before the trial in the wrongful death case was scheduled to begin, Commerce filed an emergency motion to intervene and participate in that case pursuant to Mass. R. Civ. P. 24, 365 Mass. 769 (1974). Commerce noted that, based on the summary of evidence proffered by the prosecutor at Matthew's plea hearing, on the night of David's death, Matthew and his girlfriend got into a dispute with David at a bar and the staff asked the three to leave. Matthew and his girlfriend went out the back door, where Matthew's vehicle was parked, and David left through the front

door and walked into the bar's parking lot. Rather than depart, Matthew returned in his vehicle to the bar's parking lot, where he saw David and drove near him. David gestured toward Matthew, who then accelerated his vehicle and ran over David, dragging him for forty to fifty feet, killing him.

Commerce noted that, in the wrongful death action, the estate's attorneys had presented a quite different description of events that was consistent with their theory of negligence. The estate's attorneys contend that when Matthew returned in his vehicle to the bar's parking lot, he was frightened by unknown persons who came from the bar with knives, and did not see David when he ran over him.

Commerce argued that it should be permitted to intervene because neither the estate nor the Padovanos had any incentive to offer evidence tending to show that the incident was not an accident, because all parties to the action "would prefer that insurance coverage exist for this loss." Commerce wished to ensure that, if a judgment were to issue in the wrongful death action premised on the finding that David's death was caused by Matthew's negligence rather than by his intentional conduct, it would not be procedurally foreclosed in the declaratory judgment action from litigating the dispositive issue whether David's death arose from an accident.

The judge ordered that the wrongful death trial be continued, and conducted a hearing on Commerce's motion to intervene on May 4, 2016.  In his decision denying the motion to intervene, issued on August 22, 2016, the judge acknowledged that Commerce had reason to be concerned about the risk of "underlitigation" in the wrongful death suit -- which he defined, quoting Pryor, W. Page Keeton Symposium on Tort Law, The Stories We Tell:  Intentional Harm and the Quest for Insurance Funding, 75 Tex. L. Rev. 1721, 1722 (1997), as "a plaintiff's choice to plead and prove negligence rather than or in addition to intentional tort theories when, absent insurance considerations, the plaintiff would either frame the case solely as an intentional tort claim or emphasize the intentional tort claim."  The judge noted the "legitimate interest" of a liability insurer in preventing improper underlitigation of tort claims, and recognized that it would be "patently unfair" to require Commerce to be bound by a jury's negligence finding in the wrongful death action if it were denied the means to challenge the validity of that finding.

But the judge also recognized the need to balance the rights of the insurer with those of the insured.  He noted, first, that the Padovanos would be "severely compromised" in their ability to defend themselves if their insurer were permitted to actively participate in the trial and offer

evidence that Matthew intentionally struck David.  Second, citing concerns raised in Goldstein v. Gontarz, 364 Mass. 800 (1974), the judge noted that Commerce's participation would alert the jury to the possible existence of insurance coverage for the automobile that caused David's death, and to the possibility that an insurer may therefore be responsible to pay some or all of the damages if liability were found.  Id. at 808 ("Exposing juries to [evidence of insurance coverage] is condemned because it is not itself probative of any relevant proposition and is taken to lead to undeserved verdicts for plaintiffs and exaggerated awards which jurors will readily load on faceless insurance companies supposedly paid for taking the risk").

Seeking to balance these considerations, the judge chose to adopt a "carefully balanced procedural solution" crafted by the Court of Appeals of Maryland in Allstate Ins. Co. v. Atwood, 319 Md. 247 (1990) (Atwood).  The Atwood court concluded that, where there is a risk of underlitigation, it is not appropriate to allow the "insurer to intervene in the trial of the tort suit against its insured," id. at 258, but leaving an insurer with no legal avenue to challenge a potentially collusive damages award would be contrary to "considerations of public policy and fairness."  Id. at 262.  Therefore, the court ruled that "the insurer should be able to bring a post-tort trial declaratory

judgment action" where the judge "would first determine, as a legal matter, whether the issue, which was resolved in the tort trial and which determines insurance coverage, was fairly litigated in the tort trial." Id.  If the judge were to determine that it was fairly litigated, then there would be no relitigation of the issue in the declaratory judgment action. However, if the judge were to determine that it was not fairly litigated, "then the insurer should be permitted to relitigate the matter in the declaratory judgment action."  Id.  The motion judge declared that this procedure would be consistent with our holding in Blais v. Quincy Mut. Fire Ins. Co., 361 Mass. 68, 70-71 (1972) -- that an insurer is bound by an underlying judgment as to insurance coverage, so long as there is no "fraud or collusion" -- with the declaratory judgment action determining whether the tort action was indeed tainted by fraud or collusion.[11]

After the denial of its motion to intervene, Commerce moved to stay the wrongful death trial until after the question of insurance coverage was resolved in the declaratory judgment action.  Another judge denied the motion.[12]

---

[11] Commerce does not appeal from the denial of its motion to intervene in the wrongful death action.

[12] Commerce filed another emergency motion on December 13, 2016, to stay proceedings of the wrongful death action until the

Shortly before the wrongful death trial was scheduled to begin, the estate and the Padovanos entered into agreements to settle the wrongful death suit. Under the agreements, Matthew agreed that he "grossly negligently" caused David's injuries, and Stephen admitted liability for negligent entrustment of the vehicle. The parties agreed that damages would be determined in a jury-waived proceeding. The estate agreed that it would not seek to collect or enforce any judgment against the Padovanos beyond the amount payable under their insurance policy, and the Padovanos agreed both to assign to the estate all their rights with respect to insurance coverage and to cooperate with the estate in litigation related to insurance coverage.

Commerce timely objected in writing to the proposed settlements, arguing that this type of settlement/assignment agreement should not be permitted. Among the objections it lodged were objections to the assignment of rights by its insureds against the insurer; to consent to judgment in excess of policy limits; and to the court's role in assessing damages, if the estate were to request that a judgment enter as to the amount assessed. Commerce also renewed its objection to the denial of its motions to stay the wrongful death case until the declaratory judgment action was tried.

---

declaratory judgment action had been fully litigated. That motion was also denied.

The same judge who had denied Commerce's motions to stay overruled Commerce's objections to the settlement and to the assessment of damages hearing, and conducted a hearing to assess the amount of damages in the wrongful death action. On December 28, 2016, the judge ordered that judgment enter in favor of the estate in the amount of $5,617,510. The judge later agreed to reduce the judgment by $150,000, to reflect the $150,000 received in settlement from Kona Enterprises, Inc. (see note 8, supra), and judgment ultimately entered, nunc pro tunc to December 28, in the amount of $7,669,254.41 (damages in the amount of $5,467,510 plus prejudgment interest in the amount of $2,201,744.41).

Commerce filed a notice of appeal on January 26, 2017, challenging the denial of its motions to stay the wrongful death action so that the declaratory judgment action could be adjudicated first, and the overruling of its objections to the settlement.

On February 15, 2017, Commerce paid the estate $20,000, the limit of its compulsory bodily injury coverage. On April 21, 2017, in an attempt to stop the accrual of postjudgment interest on the wrongful death judgment during the pendency of the declaratory judgment action and its appeal from the wrongful death judgment, Commerce filed a motion asking the court's permission to deposit with the court -- or, in the alternative,

to deposit in an interest bearing account -- the policy limit of its optional bodily injury coverage ($480,000), plus already accrued postjudgment interest, pursuant to Mass. R. Civ. P. 67. Rule 67 provides in relevant part:

> "In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing."

Commerce's obligation to pay postjudgment interest derives from the provision in the policy where the insurer agrees:

> "We will pay, in addition to the limits shown for Compulsory and Optional Bodily Injury to Others . . . [i]nterest that accrues after judgment is entered in any suit we defend. We will not pay interest that accrues after we have offered to pay up to the limits you selected."[13]

Given the amount of the wrongful death judgment, Commerce alleges that, unless allowed to deposit these funds, it would be obliged to pay postjudgment interest, at the twelve percent annual rate of interest established by statute, see G. L. c. 231, § 6B, accruing at a rate of over $920,000 per year from the date of the judgment.

---

[13] The policy language at issue is found in the standard Massachusetts automobile insurance policy, which is "prescribed by statute and controlled by the Division of Insurance." Ramirez v. Commerce Ins. Co., 91 Mass. App. Ct. 144, 147 (2017). As discussed infra, this provision of the standard policy was later amended, but the amendment has no effect on these cases.

Another judge denied Commerce's motion to deposit these funds. The judge noted that in Davis v. Allstate Ins. Co., 434 Mass. 174, 183, 186 (2001), we held that, to stop the accrual of postjudgment interest, the insurer must make an unconditional offer of payment of the full policy limit, plus the accrued postjudgment interest. Here, the offer of payment of the optional bodily injury coverage limit was not unconditional; Commerce would seek its return if it prevailed in the declaratory judgment action. The judge, while acknowledging our observation in Davis that an insurer "may be able to control its postjudgment interest obligations by paying the policy limits (with accrued interest) into court," id. at 187 n.13, concluded that accepting a deposit reflecting a conditional offer to pay would be inconsistent with the requirement that Commerce first make an unconditional offer to pay the policy limits.

Commerce petitioned for relief from the judge's interlocutory order pursuant to G. L. c. 231, § 118. A single justice of the Appeals Court allowed Commerce's petition, concluding that the issue "presents extraordinary circumstances warranting an interlocutory appeal." We transferred both appeals to this court on our own motion.

On February 21, 2019, during the pendency of these appeals, another Superior Court judge resolved the declaratory judgment action. After a jury-waived trial, the judge ruled that

Commerce has no duty to indemnify the Padovanos for any claims arising from the optional bodily injury coverage of its automobile policy because Matthew "decided to hit the accelerator of the vehicle knowing to a substantial certainty that the vehicle would strike David," and therefore David's "injuries and death did not arise out of an accident under the policy."[14]  As a result of that declaratory judgment, Commerce has no obligation to pay any amount of the $7.7 million judgment in the wrongful death action beyond the $20,000 it already paid under its compulsory bodily injury coverage.  But under the terms of the policy, Commerce still has an obligation to pay postjudgment interest on the judgment.  The focus of these appeals is now on the scope of that obligation -- that is, how much in postjudgment interest Commerce must pay under the policy.

Discussion.  We address Commerce's three claims of error on appeal.

1.  Motions to stay.  Commerce claims that the judge abused his discretion in denying its motions to stay the proceedings of the wrongful death suit action until its parallel declaratory

---

[14] The judge also ruled that Steven did not provide false information on his application for insurance by failing to list Matthew as a "customary operator."  Because the judge found that David's death did not arise from an "accident," this ruling did not affect the grant of declaratory judgment to Commerce as to the issue of coverage for the events at issue.

judgment action could be tried and the issue of coverage resolved. See Travenol Lab., Inc. v. Zotal, Ltd., 394 Mass. 95, 97 (1985) ("a motion to stay proceedings is ordinarily a matter addressed to the sound discretion of the trial judge"). We conclude that the judge did not abuse his discretion in denying the stay.

"Where there is uncertainty as to whether an insurer owes a duty to defend, the insurer has the option of providing the insured with a defense under a reservation of rights, filing a declaratory judgment action to resolve whether it owes a duty to defend or to indemnify, moving to stay the underlying action until a declaratory judgment enters, and withdrawing from the defense if it obtains a declaration that it owes no duty to the insured." Morrison, 460 Mass. at 358-359. An insurer who provides its insured with a defense under a reservation of rights is not entitled as a matter of law to a stay of the underlying action so that the issue of coverage can be resolved first in a declaratory judgment action. See 16 L.R. Russ & T.F. Segalla, Couch on Insurance 3d § 232:65, at 232-90 (2005) (Couch) ("An insurer suing for a declaratory judgment to determine its obligation to defend a suit pending against the insured does not, however, have the right to obtain a stay of the pending suit").

A judge deciding an insurer's motion to stay may properly consider, among other matters, whether a stay will delay the final resolution of the underlying tort action, initially by proceeding first with the trial in the declaratory judgment action and then, if the insurer were to prevail, by the need for the insured to retain its own counsel if the insurer were then to withdraw its defense.  See Parking Concepts, Inc. v. Tenney, 207 Ariz. 19, 24 (2004) (en banc) (fundamentally unfair to claimant to "be compelled to await the outcome of satellite coverage litigation before seeking redress for his [or her] injuries").[15]

It is also proper to consider whether disposition of the tort action may be expedited, rather than delayed, by first resolving whether an insurer would be responsible for paying all or part of any settlement or judgment.  See O'Bannon v. Friedman's, Inc., 437 F. Supp. 2d 490, 496 (D. Md. 2006) (prompt resolution of coverage issue in declaratory judgment action can

_____

[15] It may also be relevant whether all parties to the underlying action are also parties to the declaratory judgment action and thus able to adequately represent their interests. See G. L. c. 231A, § 8 ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding"); 16 L.R. Russ & T.F. Segalla, Couch on Insurance 3d § 232:67, at 232-93 (2005) (observing that "concerns for stepping on the factual issues in the underlying action are, of course, lessened when all the parties to that action are parties to the declaratory judgment and able to litigate the point").

"dispel doubt among the parties, . . . allow[] them to move forward with settlement talks," and may, at times, "expedite the resolution of the underlying complaint").

A judge may also consider whether trying the tort action first might render the declaratory judgment action moot if the insured were to prevail.  See, e.g., Guaranty Nat'l Ins. Co. v. Beeline Stores, Inc., 945 F. Supp. 1510, 1515 (M.D. Ala. 1996) (where insured "could prevail in the underlying lawsuit . . . the issue of whether [insurer] must indemnify [insured] would be moot"; "[t]he time and effort the court and the parties would have put toward resolving the issue would be wasted"); LabMD, Inc. v. Admiral Ins. Co., 323 Ga. App. 906, 908 (2013) ("a declaratory judgment action regarding an insurer's duty to defend can be rendered moot where the underlying liability lawsuit has proceeded to judgment").

In addition, a judge may consider whether the insurer would be unfairly prejudiced in the adjudication of the declaratory judgment action if it were to be bound by a finding made in the adjudication of the underlying tort case.  See North Star Mut. Ins. Co. v. Kneen, 484 N.W.2d 908, 911 (S.D. 1992).

Here, the judge who denied Commerce's motion to intervene protected Commerce from the risk that it would be unfairly prejudiced by a finding of negligence in the wrongful death action by allowing Commerce to ask a court for a determination

whether that issue was fairly litigated in the wrongful death action. And, in fact, we know now that Commerce was not prejudiced in the declaratory judgment action by the parties' stipulation to negligence because the judge in that action independently determined that David's injuries and death were caused by Matthew's intentional conduct, not an accident, without making any mention of the stipulation in the settlement or giving any apparent weight to it. Where Commerce was protected from prejudice and where a stay would have delayed a wrongful death trial that had already been continued because of Commerce's emergency motion to intervene, the judge did not abuse his discretion by denying the motions to stay.

2. Motion to deposit funds. A motion to deposit a sum of money with the court pursuant to Mass. R. Civ. P. 67 is generally left to the sound discretion of the judge. See Augustine v. Rogers, 47 Mass. App. Ct. 901, 903 (1999). Where Commerce's offer to deposit its policy limit for optional bodily injury coverage was conditional, that is, Commerce wanted $480,000 of the deposit returned if it prevailed in the declaratory judgment action, we conclude that the judge did not abuse his discretion in denying Commerce's motion to deposit these funds with the court (or, in the alternative, to deposit them in an interest-bearing account) for the purpose of stopping the accrual of postjudgment interest.

In Davis, 434 Mass. at 175, 178 n.7, the vehicle that struck and injured the plaintiff was insured by Allstate Insurance Company (Allstate) under the standard Massachusetts automobile insurance policy, which contained the same provision as the Commerce policy regarding the payment of postjudgment interest. Allstate defended its insured at trial in accordance with its duty to defend under the policy. Id. at 175. Before trial, Allstate offered the plaintiff payment of the $25,000 policy limits in exchange for a release of its insured from all liability relating to the accident. Id. The plaintiff declined. Id. After a jury trial, judgment entered against the insured in an amount slightly greater than $400,000 on October 18, 1990, well in excess of the $25,000 policy limit for bodily injury to another person. Id. at 175-176.

On July 1, 1996, after the Appeals Court affirmed the judgment and Allstate did not seek further appellate review, Allstate made an unconditional payment to the plaintiff of the $25,000 policy limits. Id. at 176-177. The plaintiff claimed that Allstate was liable under the policy for postjudgment interest accrued from the date of judgment to the date that Allstate tendered the unconditional payment of the policy limits. Id. at 177. Allstate claimed that it was not required to pay any postjudgment interest because it had offered its policy limits before trial, albeit on the condition that the

plaintiff release its insured from all liability. Id. at 177-178.

We held that, under the postjudgment interest provision of the policy, where Allstate owed its insured a duty to defend him in the lawsuit, Allstate was required to pay the interest that accrued after judgment was entered until it "offered to pay" the policy limits. Id. at 183. Interpreting the insurance policy at issue "according to the 'fair meaning of the language used, as applied to the subject matter,'" id. at 179, quoting Bilodeau v. Lumbermens Mut. Cas. Co., 392 Mass. 537, 541 (1984), we concluded that "offered to pay" did not mean "offered to settle" Davis, supra at 183. Rather, "Allstate was required to make an unconditional offer to pay the policy limits in order to terminate its express obligation to pay postjudgment interest." Id. Where it made only a conditional offer until it unconditionally paid the policy limits on July 1, 1996, we held that Allstate was required to pay postjudgment interest from the date of judgment through that date. Id. at 183-184.

In Davis, we observed that "[t]he clear majority of courts, interpreting a standard interest clause in a motor vehicle liability insurance policy, have held insurers liable for postjudgment interest on the entire amount of the judgment, notwithstanding the fact that the policy limits may cover only a portion of the judgment." Id. at 181. We explained that this

rule serves to protect injured plaintiffs from unreasonable delays by insurers or, where delay arises from an appeal, to compensate the plaintiffs for that delay. Id. at 182. And we further observed that, while interpreting the policy in accordance with its plain language imposes a burden on insurers, it is not an "unfair burden," where the insurer "remain[s] in control of both the tolling of interest and the litigation" and can toll the accrual of interest at any time by offering to pay the policy limit. Id., quoting Fratus v. Republic W. Ins. Co., 147 F.3d 25, 29 (1st Cir. 1998).

Citing the dissenting opinion in Davis, Commerce argues that we should revisit Davis to the extent that it unfairly penalizes an insurer for pursuing a meritorious appeal on behalf of the insured, where "the interest that mounts on the judgment during an appeal will soon eclipse the policy limit." Davis, supra at 193 (Sosman, J., concurring in part and dissenting in part). We decline to revisit the Davis court's interpretation of the language of the standard automobile policy regarding postjudgment interest. Although "[t]he principle of stare decisis is not absolute . . . adhering to precedent is our 'preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" Shiel

v. Rowell, 480 Mass. 106, 108 (2018), quoting Payne v. Tennessee, 501 U.S. 808, 827 (1991).

The principle of adhering to long-standing precedent is particularly pronounced where "the Legislature has declined to exercise its authority to overturn the court's interpretation of a statute." Commonwealth v. Rivera, 445 Mass. 119, 128 (2005). In 2016, the standard Massachusetts automobile insurance policy, which is prescribed by statute, was amended to reduce the scope of postjudgment interest that an insurer is required to pay. It now provides that interest will accrue only "on that part of a judgment or arbitration award that is within [the insurer's] limits of liability which accrues after the judgment or award in any matter [it] defend[s]." Notably, the Legislature did nothing to change the provision stating that the insurer "will not pay interest that accrues after [it has] offered to pay up to the limits" of the policy. Specifically, it did not amend "offered to pay" to read "offered to settle," and therefore implicitly left intact our interpretation of "offered to pay" as an unconditional offer.

Commerce claims that the motion judge's ruling was an abuse of discretion because we noted in a footnote in Davis, 434 Mass. at 187 n.13, that an insurer "may be able to control its postjudgment interest obligations by paying the policy limits (with accrued interest) into court." We disagree. First, this

was not a holding of the court; we "[left] the availability of this procedure for another day because it [was] not involved in [that] case." Id. Second, under our holding in Davis, the rule 67 deposit offered by Commerce, even if accepted by the court, would not stop the accrual of postjudgment interest because it was not an unconditional offer to pay the full policy limits.[16] Id. at 183. Lastly, unlike some other jurisdictions, rule 67 in Massachusetts does not expressly provide for abatement of postjudgment interest when money is deposited with the court. Compare JTX Tax, Inc. v. Flowers, 311 Ga. App. 495, 496-497 (2011) (Georgia equivalent to rule 67 provides that "[w]here the thing deposited is money, interest thereupon shall abate" [citation omitted]). Where the proffered rule 67 deposit was not mandated by Davis and would not have stopped the accrual of postjudgment interest, the motion judge did not abuse his discretion in denying Commerce's rule 67 motion.

3. Settlement/assignment agreements. Having concluded that Commerce remains obligated to pay accrued postjudgment interest, the next issue we must confront is whether Commerce

---

[16] In contrast, it might be an abuse of discretion for a judge to decline to accept a rule 67 deposit to stop the accrual of postjudgment interest where the deposit was an unconditional offer to pay the policy limits, and the plaintiff refused to accept payment directly, causing postjudgment interest to continue to accrue. We need not decide the issue because those are not the facts present before us in these appeals.

may challenge the validity or amount of that judgment, where its objection to the settlement agreement was overruled and where there was a substantial risk of underlitigation in the negotiation of that agreement.

Commerce, supported by the amici, claims that it is not bound by the settlement because of the provision in the policy that states, "If any person covered under this policy settles a claim without our consent, we will not be bound by that settlement."  Where an insurer acknowledges its duty to indemnify the insured for damages arising from a claim, and thereby agrees to pay a judgment arising from a settlement within the policy limits, the insurer will not be bound by a settlement entered into without its consent where material, actual prejudice is shown.  See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 123 (1991) (recognizing that "consent-to-settlement . . . and cooperation provisions . . . give an insurer the opportunity to protect its interests," and where insured commits breach of one of these provisions, insurer may disclaim liability where it proves actual prejudice from breach); MacInnis v. Aetna Life & Cas. Co., 403 Mass. 220, 223 (1988) ("an insurer must prove material prejudice resulting from its policyholder's violation of a consent-to-settlement provision in order to rely on that violation as an affirmative

defense to a claim for underinsured motorist coverage benefits").

But where, as here, the insurer agrees to pay for the defense of a claim against an insured under a reservation of rights, and thereby reserves its right to seek a declaration from a court that it owes no obligation to indemnify the insured for damages arising from the claim, the insurer has no right to control the defense with respect to the settlement of the claim. See Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 276-277 (1970).  See also Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 406 (2003) (recognizing that insurer may not "reserve its rights to disclaim liability while also insisting on retaining control of the insured's defense"); Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 639 (1st Cir. 1989) ("well-established policy that an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party").

Where an insurer reserves its right to indemnify, the insured faces the risk that he or she alone will be responsible to pay the judgment.  The insured is entitled to mitigate that risk by entering into a settlement that will either protect him or her from liability or diminish the amount of a judgment that he or she might be obligated to pay.  See Three Sons, Inc., 357 Mass. at 276 ("If liability is established, or a settlement

reached, and the insurer has a valid ground for disclaimer, the insured is left with a liability which, had he been able to defend or settle on other terms, might never have existed").

Where the insurer has not agreed to pay a judgment, it cannot prevent its insured from protecting his or her financial interests through a settlement.  See United Servs. Auto. Ass'n v. Morris, 154 Ariz. 113, 119 (1987) (en banc) (Morris) ("[a]n insurer that performs the duty to defend but reserves the right to deny the duty to pay should not be allowed to control the conditions of payment"; insured must not be left without recourse "to take reasonable measures to protect himself [or herself] against the danger of personal liability").  See also Miller v. Shugart, 316 N.W.2d 729, 734 (Minn. 1982) ("insurer who is disputing coverage [may not] compel the insureds to [forgo] a settlement which is in their best interests").  Therefore, an insured does not commit a breach of this provision of its policy by settling a case without the insurer's consent where the insurer is defending the claim under a reservation of rights.

Such a settlement, if enforceable, would certainly bind the parties to the settlement; it is quite a separate issue whether it would bind the insurer where the insurer is not a party to the settlement and did not consent to it.  Commerce contends that it should not in any way be bound by the

settlement/assignment agreements executed by the estate and the Padovanos, which provided that

- the insured defendants agreed to admit liability for negligence, to have the amount of damages determined by the judge at an assessment of damages hearing, and to assign all rights arising from their insurance coverage to the plaintiff; and

- the plaintiff agreed to release the defendants from all liability arising from the incident.

Here, Commerce was not bound by the parties' stipulation of negligence; the judge who granted Commerce declaratory judgment made a de novo determination that Stephen's death arose from Matthew's intentional act and was not an accident. See 14 Couch, supra at § 199:48, at 199-93, citing Morris, 154 Ariz. at 120-121 ("upon entry of a settlement agreement between the claimant and [insureds] who were being defended under a reservation of rights . . . , the liability insurer was not bound by the settlement stipulations that the actions giving rise to the claim were either negligent or intentional, and the insurer could litigate the issue of intentional acts"). Nor will it be bound, under its optional bodily injury coverage, to pay the damages determined at the assessment hearing, because it obtained a declaratory judgment that it was not obligated to pay these damages.

But where Commerce recognized its duty to defend, and paid the compulsory bodily injury coverage of $20,000, it does owe a duty under its policy to pay "[i]nterest that accrues after judgment."  Therefore, the issue we confront is whether it is bound to pay such interest on the judgment arising from the settlement.  If so, its liability to pay postjudgment interest would well exceed $2 million, far more than the $480,000 limit of liability for optional bodily injury coverage under the policy, which it has no obligation to pay following the declaratory judgment.

We have yet to decide whether the amount of a prejudgment settlement/assignment agreement is enforceable against the insurer.  We have recognized that, where an insured tortfeasor defendant enters into a prejudgment settlement with an injured plaintiff in which the defendant assigns his or her rights to the plaintiff in return for a release from personal liability, there is the risk that "collusion may exist between the injured party and the tortfeasor."  Campione v. Wilson, 422 Mass. 185, 193 (1996).  This is because, as a result of such a settlement, "the insured . . . loses the incentive to contest his liability or the extent of the injured party's damages either in negotiations or at trial."  Id. at 191, quoting Freeman v. Schmidt Real Estate & Ins., Inc., 755 F.2d 135, 139 (8th Cir. 1985).  See Spellman v. Shawmut Woodworking & Supply, Inc., 445

Mass. 675, 681 (2006) (where there is agreement for judgment, assignment of rights, and covenant in assignment not to pursue satisfaction of agreement against defendant, "we do not overlook the possibility of collusion or fraud").

But we do not join the minority of States that, because of the risk of collusion, declare such settlement/assignment agreements to be unenforceable where an insurer has honored its duty to defend. See, e.g., Associated Wholesale Grocers, Inc. v. Americold Corp., 261 Kan. 806, 846 (1997) ("an insurance company should not be required to settle a claim when there is a good faith question as to whether there is coverage under its insurance policy"); State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 713-714 (Tex. 1996) (concluding that prejudgment settlement/assignment agreement "confuse[s] and distort[s]" positions of parties, and prohibiting such agreements under certain circumstances where defendant's insurer has made good faith effort to adjudicate coverage issues prior to adjudication of plaintiff's claim). See also State Farm Mut. Auto. Ins. Co. v. Freyer, 2013 MT 301, ¶¶ 36-38 (stipulated settlement that relieves insured of any financial stake in outcome of case gives insured "little incentive to minimize the settlement amount" and, if permitted, "would allow insureds to unilaterally inflate policy limits anytime an insurer tests coverage through a declaratory action").

If we were to declare such settlement/assignment agreements always to be unenforceable, we would effectively prevent defendants whose insurer has offered a defense under a reservation of rights from being able to protect themselves from the risk that they will be held personally responsible to pay a judgment that they could ill afford. See Morris, 154 Ariz. at 118 (insured party, if prohibited from entering into settlement while defended under reservation of rights, "risk[s] financial catastrophe"). Moreover, the risk of collusion must be balanced against policy considerations that encourage settlement agreements, and "by settled law that most contract claims are assignable" and that "contracts not to sue . . . are usually valid." Spellman, 445 Mass. at 681-682.

Balancing these risks and benefits, we conclude that an insurer who defends a claim under a reservation of rights is bound by the amount of a judgment arising from a prejudgment settlement/assignment agreement where (1) the insurer is given notice of the settlement/assignment agreement and an opportunity to be heard by the court before judgment enters; (2) the insurer contests the judgment; and (3) the insured, after hearing, meets his or her burden of showing that the settlement is reasonable in amount. See Patrons Oxford Ins. Co. v. Harris, 2006 ME 72, ¶ 18, quoting Morris, 154 Ariz. at 120 (settlement/assignment agreements are valid where "the insured or claimant can show

that the settlement was reasonable and prudent"); Miller, 316 N.W.2d at 735 ("The burden of proof is on the claimant . . . to show that the settlement is reasonable and prudent").

In deciding whether a settlement/assignment agreement is reasonable, a judge, examining the totality of the circumstances at a reasonableness hearing, should determine whether the amount of the settlement is reasonable in light of "the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." Miller, 316 N.W.2d at 735. See Patrons Oxford Ins. Co., 905 A.2d at 827 (in determining reasonableness of settlement, judge should consider "the possibility of the insured's liability, risk of an adverse verdict, and the damages portion of the claimant's case"). Because the consequence of a settlement/assignment agreement is that the plaintiff may collect damages only from the insurer, having released the insured defendants from personal liability, a reasonable settlement amount may not exceed the limits of the insured's potential insurance coverage, because the plaintiff may recover in damages no more than that from the insurer. See Kelly v. Iowa Mut. Ins. Co., 620 N.W.2d 637, 644-645 & n.6 (Iowa 2000) (noting that insurer has "no obligation" to pay settlement amount "in excess of its [policy] limits"). See also Babcock & Wilcox Co. v. American Nuclear Insurers, 635 Pa. 1, 30 n.18 (2015) (unless insurer acts in bad faith, reasonable settlement

"confined to the previously contracted policy limits").  And where optional bodily injury coverage, as here, requires a finding that the plaintiff's injuries were caused by an accident rather than by intentional conduct, the probability of such a finding may also be considered in determining the amount of a reasonable settlement.  See Miller, supra (highlighting importance of considering risk of adverse verdict); Patrons Oxford Ins. Co., supra (same).

Binding an insurer to the amount in a settlement/assignment agreement that meets a reasonableness test is consistent with the approach of the majority of courts, which allow such agreements if they meet certain conditions.  See Great Divide Ins. Co. v. Carpenter, 79 P.3d 599, 610 (Alaska 2003) (approach declaring settlement/assignment agreements void as against public policy contrary to Alaska case law and "contrary to the decisions of most of the other states whose courts have ruled on the validity" of such agreements); Harris, Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants not to Execute in Insurance Litigation, 47 Drake L. Rev. 853, 859 & n.31 (1999) (collecting cases where "[m]ost courts" have permitted settlement/assignment agreements).  The majority approach allows unauthorized settlements with stipulated liability to be enforced "so long as such agreements are made fairly, with notice to the insurer, and without fraud or

collusion on the insurer, and the settlement is reasonable and prudent" (footnote omitted).  14 Couch, supra at § 199:48, at 199-92.

We focus only on reasonableness, rather than "collusion," because every settlement/assignment agreement risks being characterized as "collusive" simply because the parties have negotiated a settlement where only the insurer is at risk of paying the plaintiff's damages and the defendant will be released from liability.  But if this is enough to defeat a settlement/assignment agreement, then all judgments arising from such agreements will be deemed unenforceable against the insurer, regardless of the amount.  Where the insurer expresses concern that the plaintiff and the insured defendant have colluded to improperly inflate the judgment, that concern may be considered in evaluating the reasonableness of the settlement amount.

In the wrongful death action, Commerce objected on the record to the settlement/assignment agreements between the estate and the Padovanos.  We conclude that, in doing so, it preserved its right to be heard on the question whether the amount of the settlement was reasonable in the manner we have now described.  The settlement/assignment agreements here are not immune from a reasonableness review simply because the parties elected to have the amount of damages determined by a

judge at an assessment of damages hearing.  For all practical purposes, by agreeing that damages will be so calculated, the parties essentially agreed that the settlement amount is the amount of damages that would have been awarded had liability been found at a bench trial, without any compromise of the amount based on the risk of a finding that the defendants were not negligent.

Because no reasonableness review was conducted, we vacate the judgment and remand the case to the Superior Court for a hearing on the reasonableness of the settlement/assignment agreements.  Where the amount of the judgment arising from the settlement/assignment agreements was greater than $500,000, the limits of the insured's combined mandatory and optional bodily injury coverage, we conclude that the amount obtained through the settlement is per se unreasonable.  But a reasonableness hearing is needed to allow the judge to determine what would have been a reasonable settlement amount under the circumstances, and a new judgment in that amount shall enter.  Postjudgment interest will accrue nunc pro tunc from the date of the original judgment, December 29, 2016, on the judgment amount that the court deems reasonable.

We note that the procedure we direct on remand is different from what we expect to happen in the future where an insurer successfully challenges a settlement/assignment agreement before

judgment.  Where the challenge is made before judgment enters, a judge who decides that the amount set forth in (or determined by) the settlement/assignment agreement is not reasonable may decline to enter a judgment in that amount, and invite the parties to renegotiate an agreement that might prove reasonable in amount.  Here, where so much time has passed since the judgment entered, we do not believe that to be a reasonable alternative under the circumstances.  We therefore direct the judge instead to make his or her own determination of a reasonable settlement amount so that postjudgment interest may be paid on that amount.

Conclusion.  The orders denying Commerce's motions to stay the wrongful death action and denying Commerce's rule 67 motion are affirmed.  The entry of judgment in the wrongful death action is vacated, and the matter is remanded for a reasonableness hearing to be conducted in a manner consistent with this opinion.

So ordered.